FARMERS STATE BANK, AURORA, NEBRASKA, A CORPORATION, APPELLEE, v. EDISON NON-STOCK COOPERATIVE ASSOCIATION, A CORPORATION, APPELLANT, IMPLEADED WITH DICK J. NELSON, APPELLEE.

212 N. W. 2d 625

Filed November 30, 1973. No. 39013.

William H. Sherwood of Sherwood & Poff, for appellant.

Adams & Carstenson and Knudsen, Berkheimer, Endacott & Beam, for appellee Farmers State Bank.

Heard before WHITE, C. J., BOSLAUGH, McCOWN, and NEWTON, JJ., and RONIN, District Judge.

McCown, J.

This is an action for conversion brought by the plaintiff creditor, Farmers State Bank, the holder of a security interest in farm crops, against the defendant elevator which purchased grain from the farmer debtor. At the conclusion of all the evidence, the District Court granted plaintiff's motion for judgment; entered judgment for the plaintiff in the sum of $11,728.65; and discharged the jury. The defendant elevator has appealed.

On June 16, 1969, Dick J. Nelson, as debtor, executed a financing statement and security agreement in favor of the plaintiff, Farmers State Bank. The agreement granted plaintiff bank a security interest in all the debtor's crops and livestock located on described real estate situated in both Gosper and Hamilton counties in Nebraska. The agreement provided: "If marked here ☒ the security interest shall attach to all product and proceeds of Collateral, but Secured Party does not hereby consent to the sale of the Collateral" and "If marked here ☒ Debtor shall, so long as no event of default has occurred, have the right in the regular course of business, to process and sell inventory and farm products only, but the security interest shall attach to all product and proceeds of all Collateral."

In large type above the signatures of the parties appeared the language: "DEBTOR AGREES THAT HE HAS READ THIS AGREEMENT AND THAT THIS AGREEMENT INCLUDES AND IS SUBJECT TO THE ADDITIONAL PROVISIONS SET FORTH BELOW AND ON THE REVERSE SIDE HEREOF, THE SAME

BEING INCORPORATED HEREIN BY REFERENCE."

In the first paragraph on the reverse side of the agreement, the debtor warrants and covenants: "(1) That except for the security interest granted hereby Debtor is, * * * the owner of the Collateral free from any adverse lien, security interest or encumbrance; * * *. (2) That no financing statement covering the Collateral or any proceeds thereof is on file in any public office * * *. (3) Not to sell, transfer or dispose of the Collateral, nor take the same or attempt to take the same from the county where kept as above stated, without the prior written consent of the Secured Party. * * * (5) Not to permit or allow any adverse lien, security interest or encumbrance whatsoever upon the Collateral, * * *."

The third paragraph on the reverse side of the agreement provides: "DEBTOR SHALL BE IN DEFAULT under this agreement upon the happening of any of the following events or conditions: (1) default in the payment of (sic) performance of any obligation, covenant or liability contained or referred to herein or in any note evidencing the same; (2) any warranty, representation or statement made or furnished to Secured Party by or on behalf of Debtor proves to have been false in any material respect when made or furnished; (3) any event which results in the acceleration of the maturity of the indebtedness of Debtor to others under any indenture, agreement or undertaking; (4) loss, theft, damage, destruction sale or encumbrance to or of any of the Collateral * * * (5) death, dissolution, termination of existence, insolvency, business failure, appointment of a receiver * * *."

On June 18, 1969, a separate financing statement signed by the parties was filed in Gosper County. It contained the name and address of the debtor and the secured party, described the collateral and the real estate on which the crops were to be grown, which included the land in Gosper County on which this grain

was grown. The financing statement as filed showed also that it covered proceeds.

On April 16, 1969, Dick J. Nelson had executed a security agreement and financing statement covering the same collateral to the Farmers and Merchants Bank at Edison, Furnas County, Nebraska. That financing statement was filed for record in Gosper County on April 17, 1969. On the date that Nelson executed the security agreement and financing statement to the plaintiff bank on June 16, 1969, he owed the Farmers and Merchants Bank at Edison the sum of $1,000. Thereafter the bank at Edison advanced additional sums. The maximum amount of indebtedness to the Edison bank at any one time was $4,610.

Beginning in November of 1969, Nelson sold 79 loads of grain to the defendant elevator at Edison, Furnas County, Nebraska. The elevator paid Nelson for the grain at various times and in various amounts, a total of approximately $20,000. Nelson made one payment on his debt to the plaintiff bank on January 19, 1970, by his personal check, in the sum of $3,584.48. He also paid approximately $5,000 to the Edison bank to apply on the prior lien. There is evidence that prior to the grain sales Mr. Armbruster, president of the plaintiff bank, had discussed the disposition of crops with the debtor Nelson during the growing season and that the bank understood that part of the crops would be fed and part of the crops would be sold, and that Nelson would sell them. The plaintiff bank had no actual knowledge of any sales made by Nelson until after all the sales had been made. There was also evidence that in the oral discussions Armbruster did not at any time waive any rights to the security, and that there was no authorization of any sale except a sale within the limits authorized by the written security agreement and financing statement. At the times the oral discussions were held, and at the times the grain was later sold by Nelson, the plaintiff bank had no actual knowledge

that Nelson had given a prior lien on the crops to the Edison bank nor that any other similar event of default had occurred. The plaintiff bank did not learn those facts until sometime in 1971.

The critical issue in this case is whether the sales of grain by Nelson to the defendant elevator were authorized by the plaintiff bank. The defendant elevator essentially contends that if a sale was authorized under any specified conditions, such a conditional authorization constitutes a waiver of the security interest in the collateral as to a purchaser for value, even though the actual sale made was not within conditions and limitations of the authorization.

The controlling section of the Uniform Commercial Code which governs this case is section 9-306(2). U. C. C.: "Except where this article otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof by the debtor unless his action was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor."

Under the terms of the financing statement and security agreement here, the debtor Nelson was given the right to sell farm products in the regular course of business, but only so long as no event of default had occurred. At the time Nelson executed the agreement, he was violating at least three specific covenants and warranties which were events of default by the specific language of the agreement. Those defaults continued thereafter and additional events of default occurred. These defaults prevented the authorization clause from becoming effective for any sale. A secured party may refuse to authorize a sale or may authorize it under specific limitations and conditions. Where a sale of farm products by a debtor engaged in farming operations is claimed to be authorized under the terms of a security agreement, the sale must ordinarily be made

in compliance with the conditions and limitations of the authorization. Under the specific terms of the security agreement here, Nelson's sale of the grain was not authorized by the secured bank.

Under the specific terms of the security agreement the defaults of Nelson eliminated his right to sell unless the plaintiff bank gave prior written consent. Nelson covenanted "not to sell, transfer or dispose of the collateral, nor take the same or attempt to take the same from the county where kept as above stated, without the prior written consent of the secured party." All the grain sales here were made outside the county where the crops were raised and without the written consent of the plaintiff bank.

The defendant elevator attempts to rely upon the prior course of conduct of the parties and the fact that the plaintiff bank understood in advance that Nelson expected to sell the grain, and made no objection. The elevator asserts that such conduct impliedly constituted an authorization of sale and a waiver of the security interest in the collateral. Such assertions were answered by this court in Garden City Production Credit Assn. v. Lannan, 186 Neb. 668, 186 N. W. 2d 99. In that case we considered a similar provision prohibiting the removal or sale of the collateral without the written consent of the secured party. We held that ordinarily to establish a waiver of legal right there must be a clear, unequivocal, and decisive act of a party showing such a purpose or acts amounting to an estoppel on his part. We also held that ordinarily a waiver is a voluntary abandonment or surrender by a capable person of a right known by him to exist, with the intention that such right shall be surrendered.

Here, as in that case, we are dealing with a controversy between a lender who has duly perfected its security interest in collateral and a third party purchaser who had no actual knowledge of either the provisions of the security agreement or of the course of

dealing between the debtor and the lender. The acts of the lender here are not acts which indicate an unequivocal, voluntary, and intelligent waiver of its rights under a perfected security agreement against a purchaser charged with constructive notice of the agreement.

We point out also that section 1-205(4), U. C. C., provides: "The express terms of an agreement and an applicable course of dealing or usage of trade shall be construed wherever reasonable as consistent with each other; but when such construction is unreasonable express terms control both course of dealing and usage of trade and course of dealing controls usage of trade."

In this case the financing statement containing all the required information was filed in strict compliance with the provisions of the Uniform Commercial Code and the security interest of the plaintiff bank had been duly perfected. The defendant elevator in purchasing farm products from a person engaged in farming operations was bound by the provisions of the code and must take the risk of a failure to check the lien records.

The judgment of the District Court was correct in all respects and is affirmed.

AFFIRMED.