**In re ENVIRONMENTAL ELECTRONIC SYSTEMS, INC., d/b/a Warehouse Audio and Dirty Don's Warehouse Audio, Bankrupt.**

**Benjamin C. ABNEY, Trustee, Plaintiff,**

v.

**NIKKO AUDIO, Defendant.**

**Bankruptcy No. B79–1377A.**

United States Bankruptcy Court,
N. D. Georgia,
Atlanta Division.

Feb. 1, 1980.

---

584

Mark A. Kelley, Atlanta, Ga., for trustee, plaintiff.

David W. Pollard, Atlanta, Ga., for defendant.

## ORDER

HUGH ROBINSON, Bankruptcy Judge.

This matter came before the Court on Motion for Summary Judgment filed by the Trustee, Benjamin C. Abney, on October 1, 1979 and on "Cross Motion for Summary Judgment" filed by the defendant, Environmental Electronic Systems, Inc., on October 19, 1979. Having considered the briefs and other documents submitted by the parties regarding these motions and the pleadings on file, the Court makes the following entry:

## FINDINGS OF FACT

(1) On August 14, 1975, Nikko Electronic Corporation of America (hereinafter referred to as "Nikko") entered into a written "Security Agreement" with Donald Rosinsky (hereinafter referred to as "Rosinsky") d/b/a Environmental Electronic Systems a/k/a Hi Fi Stop of 265 East Paces Ferry Road, Atlanta, Georgia 30305.

(2) Said Security Agreement was filed with the Secretary of State of the State of Georgia on September 15, 1975 and with the Superior Court of Fulton County, Georgia on October 15, 1975.

(3) On October 15, 1975 Nikko perfected its security interest by filing a UCC–1 Financing Statement with the Superior Court of Fulton County, Georgia showing "Nikko" as the creditor and "Donald Rosinsky d/b/a Environmental Electronic Systems d/b/a Hi Fi Stop, 265 East Paces Ferry Road, Atlanta, Georgia 30305" as the debtor.

(4) The collateral was listed on the UCC–1 Financing Statement as follows: "All inventory bearing the registered trademark and. brand name 'Nikko', including, but not limited to stereo AM/FM receivers, tuners and amplifiers now and hereafter acquired." Proceeds of collateral were also covered by the UCC–1 Financing Statement.

(5) The UCC–1 Financing Statement was indexed under the name of "Environmental Electronic Systems." Said Security Agreement was signed by Nikko's authorized representative and by "Donald Rosinsky, Owner, Environmental Electronic Systems."

(6) Environmental Electronic Systems was incorporated under the laws of the State of Georgia on November 25, 1975. The corporation was named Environmental Electronic Systems, Inc. (hereinafter referred to as "the Corporation"), and the Corporation's business address was 265 East Paces Ferry Road, Atlanta, Georgia.

(7) Rosinsky was the president and principal stockholder of the Corporation.

(8) The Corporation never assumed the debts or obligations of Rosinsky or Environmental Electronic Systems or Hi Fi Stop.

(9) Nikko was aware of the incorporation of Environmental Electronic Systems by May 2, 1978.

(10) Nikko did not authorize any transfer of collateral from Rosinsky's sole proprietorship to the Corporation which may have occurred.

(11) In February of 1979 the Corporation conveyed property of an approximate value of $16,000.00 to Nikko.

(12) The Corporation filed a voluntary petition in bankruptcy on May 8, 1979.

(13) On August 2, 1979, the Trustee in bankruptcy filed a "Complaint and Counterclaim" requesting the Court to order a turn over to the Trustee of the property transferred by the Corporation to Nikko in February of 1979. The trustee asserts that this transfer was preferential under Section 60(a)(1) of the Bankruptcy Act, 11 U.S.C. § 96(a)(1).

(14) The Trustee filed a Motion for Summary Judgment on October 1, 1979.

(15) Nikko filed a "Cross Motion for Summary Judgment" on October 19, 1979. It is Nikko's position that the Corporation was bound by the Security Agreement entered into by Nikko and Rosinsky and by the UCC-1 Financing Statement filed in the Superior Court of Fulton County on October 15, 1979. Nikko contends it has a perfected security interest in any Nikko inventory transferred by Rosinsky's proprietorship to the Corporation.

## APPLICABLE LAW

The Court will first address the issue of whether the Corporation is bound by the Security Agreement entered into by Nikko and Rosinsky. Nikko claims that, by virtue of the provision in the Security Agreement making the terms of the agreement applicable to the debtors successors or assigns, and by virtue of the alleged fact that Rosinsky transferred the inventory to the new corporation subject to Nikko's security interest, the newly formed corporation was bound by the agreement. The Trustee denies that the incorporated entity was a successor within the meaning of the Security Agreement to the sole proprietorship which had a Security Agreement with Nikko. The Trustee also denies that the inventory in this dispute was ever in the possession of the individual proprietorship owned by Rosinsky.

As the Corporation was organized under the laws of the State of Georgia, this Court must look to the laws of that State to determine the liability of the Corporation for the obligations of Rosinsky's sole proprietorship. An examination of the case law reveals that in Georgia, a corporation which legally acquires the assets of another business entity does not thereby become responsible for the debts of the former entity. *Greenberg-Miller Company v. Everett Shoe Company*, 138 Ga. 729, 75 S.E. 1120 (1912). It was said in *Taylor Lumber Company v. Clark Lumber Company*, 33 Ga.App. 815, 127 S.E. 905 (1925);

"A corporation which lawfully acquires all of the property of a partnership does not thereby become responsible for the partnership debts, and, though the corporation has the same name as the trade name or device used by the partnership, and the persons who constituted the partnership own the entire capital stock of the corporation, the business of the partnership having been merged into that of the corporation, these facts alone would not make the corporation liable for the obligations of the partnership".

To become liable for the debts of another business entity, a successor corporation must assume the debts in a manner recognized by law. *Dickson—Carroll Company v. United States Fidelity and Guaranty Company*, 58 Ga.App. 540, 199 S.E. 322 (1938). There must be a written agreement providing for the assumption of liability signed by the party to be charged, or by its agent expressly authorized, or it must be shown that the corporation has received the consideration on account of which the partnership has an obligation. The *Georgia Company v. Castleberry*, 43 Ga. 187 (1871).

Although most of the Georgia case law deals with the assumption of the debts of a prior business entity by a later organized corporation, the Court finds that the rules enunciated by these cases apply as well to the assumption of contract obligations of a prior business entity. There is no evidence in the record that the Corporation assumed any of Rosinsky's contract obligations. Accordingly, this Court finds that the Corporation is not bound by the Security Agreement between Rosinsky and Nikko.

There is a dispute as to whether any inventory covered by the Security Agreement was transferred from Rosinsky to the Corporation. Rosinsky claims he never possessed the items of inventory repossessed by Nikko, but Nikko alleges inventory was transferred by Rosinsky's sole proprietorship to the Corporation. The Court must now address the question of whether Nikko's security interest in inventory that may have been transferred from Rosinsky to the Corporation continued in the collateral after transfer.

Nikko claims that the issue is whether a change in the name of the debtor will affect the validity of a perfected security interest. The Uniform Commercial Code (hereinafter referred to as the "UCC"), as enacted in Title 109A of the Ga.Code Ann. governs the determination of this issue.

In reliance on § 109A–9–402(7) of the Ga.Code Ann. which provides for the circumstances under which a creditor must file a new financing statement when a debtor changes its name, identity, or corporate structure, Nikko argues that the change of name from Environmental Electronic Systems to Environmental Electronic Systems, Inc. did not affect the validity of Nikko's perfected security interest. The Court finds that this section of Chapter 109A is inapplicable to this case. The Security Agreement was entered into on August 14, 1975 and the UCC–1 Financing Statement was filed on October 15, 1975. Because the 1972 amendments to the UCC did not take effect in Georgia until July 1, 1978, the 1962 version of the UCC in the Ga.Code Ann. governs this case. Paragraph (7) of § 109A–9–402 is not included in the 1962 version of § 109A–9–402 of the Ga.Code Ann.

The applicable statutory provision is § 109A–9–306(2) of the Ga.Code Ann. which provides:

"Except where this Article otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof by the debtor unless his action was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor."

■ Without the knowledge and consent of a secured creditor to a transfer of secured property, a security interest remains perfected in the property so transferred. In *Ryan v. Rolland*, 434 F.2d 353 (10th Cir. 1970), the court held that a creditor's security interest remained perfected in the inventory, fixtures, and equipment transferred by a partnership to a later formed corporation. The creditor had no knowledge of the incorporation and had not consented to the

transfer of assets from the partnership to the corporation. The case of *In Re: Sofa Center, Inc.*, 18 UCC Rep. 536 (M.D.Fla. 1975) also involved a situation where a partnership had incorporated and transferred its assets to the new corporation without the knowledge and consent of a secured creditor of the partnership. Again, it was found that under these circumstances the security interest was still perfected.

■ Where a secured creditor is fully aware of the incorporation of a partnership or sole proprietorship and consents to a transfer of collateral to the corporation by the former business, the security interest is extinguished. *In Re: Vieths, Inc.*, 9 UCC Rep. 943 (D.C.E.D.Wis., Ref.1971). In that case the court pointed out that the security interest would have continued in the original collateral but for the creditors knowledge of and consent to the transfer. With regard to inventory acquired after the incorporation the court said, "Whether it [the security interest] would be good against after-acquired inventory purchased by the corporation would be open to serious question."

■ Under § 109A–9–306(2) of the Ga. Code Ann., Nikko's security interest in any inventory covered by the Security Agreement which was transferred by Rosinsky to the Corporation, or the proceeds thereof, continued unless the transfer was authorized by Nikko. The record indicates that Nikko was aware of the incorporation of Environmental Electronic Systems for a statement of Nikko dated May 2, 1978, listing purchases made by the Corporation from January 31, 1978 to April 24, 1978 is addressed to "Environmental Electronics, Inc." There is no evidence that Nikko objected to any transfer of collateral from Rosinsky to the Corporation which may have occurred. However Paragraph III E of the Security Agreement between Rosinsky and Nikko states:

"The Collateral will not be sold, transferred or disposed, or subjected to any paid charge, including taxes of any subsequent interest of a third party created or suffered by Debtor, voluntary or involuntary unless Secured Party consents in writing to such charge, transfer or disposition".

There is no evidence that Nikko consented in writing to a transfer of collateral from Rosinsky to the Corporation.

It has been recognized that authority to dispose of collateral may be implied. *United States v. Big Z Warehouse*, 311 F.Supp. 283 (S.D.Ga.1970). There is a split of authority on the issue of whether consent to a transfer may be implied when a security agreement expressly provides that collateral may not be transferred without the written consent of the secured party. Some cases have held that a waiver of this provision may be implied from the course of dealings between the parties. See *Central Washington Production Credit Association v. Baker*, 14 UCC Rep. 1055, 11 Wash.App. 17, 521 P.2d 226 (1974); *Clovis National Bank, Clovis N. M. v. Thomas*, 4 UCC Rep. 137, 77 N.M. 554, 425 P.2d 726 (1967).

Other cases hold that when a security agreement requires prior written authorization before collateral may be disposed of by the debtor, authorization cannot be established by a course of dealing. *Wabasso State Bank v. Caldwell Packing Co.*, 19 UCC Rep. 315, Minn., 251 N.W.2d 321 (1976); *Farmer's State Bank v. Edison Non-Stock Cooperative Assn.*, 13 UCC Rep. 728, 190 Neb. 789, 212 N.W.2d 625 (1973); *Garden City Production Credit Assn. v. Lannan*, 8 UCC Rep. 1163, 186 Neb. 668, 186 N.W.2d 99 (1971). These cases rely on § 1–205(4) of the UCC [§ 109A–1–205(4) of the Ga.Code Ann. (1962)] which provides:

"The express terms of an agreement and an applicable course of dealing or usage of trade shall be construed wherever reasonable as consistent with each other; but when such construction is unreasonable express terms control both course of dealing and usage of trade and course of dealing controls usage of trade."

This Court concludes that the better rule is that espoused by the courts which referred to § 1–205(4) of the UCC. The Court so concludes for the reason expressed by the court in the *Wabasso State Bank* case, *supra*. In that case the court said:

"Article 9 . . . is an attempt to bring simplicity and certainty to the law of secured transactions through a system of written agreements and recorded notice. It is not our purpose to inject into the Uniform Commercial Code, rules which unnecessarily confuse and complicate that thoroughly considered and carefully drafted body of law, unless to do otherwise would result in . . . manifest injustice[s]."

There is no evidence that Nikko consented, in writing, to a transfer of collateral from Rosinsky to the Corporation. Accordingly, this Court concludes that Nikko did not authorize any transfer of collateral from Rosinsky to the Corporation.

Both parties in this case have moved for summary judgment. A motion for summary judgment is granted only when there are no genuine issues of material fact which remain to be determined by the Court. Rule 56 of the Federal Rules of Civil Procedure.

There are material issues of fact remaining to be resolved. This Court has concluded that Nikko has a perfected security interest in any inventory covered by the Security Agreement, which was transferred from Rosinsky to the Corporation or the identifiable proceeds thereof. Section 109A–9–306(2) of the Ga.Code Ann. (1962). In order for Nikko to prevail in this case, it must be established that the repossessed property was either property transferred from Rosinsky to the Corporation or identifiable proceeds thereof. The record is inconclusive with regard to this fact. Rosinsky maintains that he was never in possession of the repossessed property. Nikko has asserted in its brief that the Corporation acquired the inventory of the proprietorship. On the basis of the evidence in this case, the Court cannot conclude as a matter of law that the inventory repossessed by Nikko was either inventory transferred from the proprietorship to the Corporation or the identifiable proceeds thereof.

 This Court has concluded that the Security Agreement between Nikko and Rosinsky is not binding on the Corporation. Therefore any Nikko inventory not acquired by the Corporation from the proprietorship is not subject to Nikko's security

interest. To the extent that the inventory is not collateral transferred from Rosinsky to the Corporation or identifiable proceeds thereof, the repossession may constitute a preferential transfer within the meaning of Section 60(a)(1) of the Bankruptcy Act, 11 U.S.C. 96(a)(1), and the Trustee may have a right to avoid this transaction under Section 60(b) of the Bankruptcy Act, 11 U.S.C. § 96(b). However, this Court is without sufficient evidence to conclude as a matter of law that a preferential transfer has occurred.

### CONCLUSIONS OF LAW

(1) Nikko and Rosinsky's sole proprietorship entered into a valid Security Agreement. The security interest created by said Security Agreement was duly perfected by the filing of a UCC–1 Financing Statement in the Superior Court of Fulton County.

(2) Rosinsky's sole proprietorship, Environmental Electronic Systems was incorporated in accordance with Georgia law. The new Corporation never assumed the debts or contract obligations of the former sole proprietorship by executing a writing providing for such assumption and signed by an authorized agent of the corporation. Therefore the Security Agreement entered into by Rosinsky and Nikko is not binding on the Corporation.

(3) The Security Agreement expressly provided that the collateral covered by the Security Agreement could not be transferred by the debtor unless such transfer was consented to in writing by the secured party. Nikko never consented in writing to any transfer of collateral from Rosinsky's sole proprietorship to the Corporation. Therefore any transfer of collateral from the sole proprietorship to the Corporation was not authorized by Nikko.

(4) As Nikko did not authorize any transfer of collateral from the sole proprietorship to the Corporation, Nikko still has a perfected security interest in any collateral so transferred or identifiable proceeds thereof under § 109A–9–306(2) of the Ga. Code Ann. (1962).

(5) Because the Security Agreement is not binding on the Corporation, the repossession by Nikko of any Nikko inventory which did not consist of inventory transferred to the Corporation by the sole proprietorship or identifiable proceeds thereof may constitute a preferential transfer under Section 60(a) of the Bankruptcy Act, 11 U.S.C. § 96(a).

(6) The following issues of material fact remain to be resolved:

(a) Did the Nikko inventory repossessed by Nikko in February of 1979 consist of inventory which had been transferred by the sole proprietorship to the Corporation or identifiable proceeds thereof?

(b) Do the elements of preference exist with regard to the repossession of any Nikko inventory by Nikko which was not inventory transferred by the sole proprietorship to the Corporation or identifiable proceeds thereof?

As this Court has determined that there are genuine issues of material fact which remain to be decided, it is hereby

ORDERED that the "Motion for Summary Judgment" filed by the Trustee in bankruptcy be and same is hereby denied;

It is further ORDERED that the "Cross Motion for Summary Judgment" filed by Nikko be and same is hereby denied.