641 P.2d 248

**CITICORP HOMEOWNERS, INC., a Delaware corporation, Plaintiff/Appellee,**

v.

**WESTERN SURETY COMPANY, a South Dakota corporation, Defendant/Appellant.**

No. 2 CA–CIV 4029.

Court of Appeals of Arizona, Division 2.

Dec. 21, 1981.

Rehearing Denied Jan. 27, 1982.

Review Denied Feb. 23, 1982.

Robbins & Green, P. A. by Jill H. Grossman, Phoenix, for plaintiff/appellee.

Fish, Briney, Duffield, Miller, Young & Adamson, P. C. by Richard Duffield, Tucson, for defendant/appellant.

OPINION

HOWARD, Judge.

The sole question on this appeal is whether Citicorp (CHI), an inventory financier that loaned money to a mobile home dealer, North American Homes, Inc., was entitled to recover from Western Surety, the dealer's surety, against the dealer's motor vehicle dealer license bond. On Citicorp's motion for summary judgment, the trial court ruled in its favor and the surety appealed. We affirm.

Citicorp loaned money to North American Homes pursuant to a mobile home loan agreement and security agreement. It purchased certain installment sales contracts and security agreements from the dealer pursuant to a mobile home dealer agreement. Western Surety issued two bonds on behalf of North American Homes—a dealer's bond in the amount of $5,000, which is not at issue, and a motor vehicle dealer license bond in the amount of $10,000, which is the subject of this appeal. Pertinent parts of the mobile home loan agreement and security agreement are as follows. Paragraph nine provides:

"Unless and until an event of default shall have occurred, Dealer may sell its inventory of new and used mobile homes, house trailers, travel trailers, motor homes, other recreational vehicles and parts, accessories and furnishings used in connection therewith to buyers in the regular course of Dealer's business, but nothing herein shall be deemed to waive or release any interest CHI may have hereunder or under any other agreement in any proceeds of such inventory including any accounts receivable, chattel paper, security agreements, instruments, contract rights, documents and general intangibles. Upon any sale of such inventory, Dealer shall forthwith pay over to CHI an amount equal to the unpaid balance of the amount advanced with respect to the item of inventory sold; provided however, that if Dealer is in default, Dealer shall pay over forthwith the entire proceeds of such sale, *but a Dealer in default shall not be authorized to sell such inventory without prior separate consent of CHI.*" (Emphasis added)

Paragraph eleven provides:

"Whenever a default shall occur, or at any time thereafter (such default not having previously been cured), CHI at its option and without demand or notice of any kind, may declare the indebtedness to be immediately due and payable. Upon default CHI shall have the remedies of a secured party under the Uniform Commercial Code with respect to the Collateral and all other security pursuant to any other agreements between CHI and Dealer. In addition, Dealer grants to CHI, in any such event, the right to take possession of the Collateral and such other security by any means not involving a breach of the peace and to sell the same, and for such purposes, CHI may enter upon the premises on which the Collateral or other security shall be situated and remove the same to such other place as CHI shall determine; Dealer waives any notice of hearing with respect to such taking of possession."

After execution of this agreement, North American Homes sold five mobile homes. The proceeds of these sales totaled $67,958. North America failed to pay any of these proceeds to Citicorp and this litigation ensued. Both North American Homes and Western Surety were named as defendants and two judgments resulted.[1] Only the

---

1. North American Homes failed to answer and a default judgment in the amount of $113,983.33 plus attorney's fees and costs was entered in Citicorp's favor.

judgment against Western Surety is involved in this appeal.

█ The motor vehicle dealer license bond enures to the benefit of any person who shall suffer any loss by reason of any unlawful act of the licensee. A.R.S. § 28–1305(B). The term "unlawful act" means a tort or any wrongful act not involving a breach of contract for which a civil action will lie. *Commercial Standard Insurance Company v. West*, 74 Ariz. 359, 249 P.2d 830 (1952). Citicorp alleged several unlawful acts including conversion. Since we agree with its position that North American Homes was guilty of conversion, we need not consider the other alleged unlawful acts.

We agree with Citicorp that our decision in *Empire Fire and Marine Insurance Company v. First National Bank of Arizona*, 26 Ariz.App. 157, 546 P.2d 1166 (1976) is dispositive of the issue in this appeal. It is undisputed that North American was in default under its security agreement with Citicorp. Citicorp had, on default, the right to take possession of the dealer's inventory. A.R.S. § 44–3149. Under the terms of the security agreement, the dealer had the right to sell his inventory so long as there was no default. When under the terms of the contract a debtor has the right to sell so long as there is no default, a defaulting debtor has the right to thereafter sell only with the secured creditor's consent. *Farmers State Bank, Aurora v. Edison Non-Stock Cooperative Association*, 190 Neb. 789, 212 N.W.2d 625 (1973).

█ We do not agree with the statement in *Insurance Company of North America v. General Electric Credit Corporation*, 119 Ariz. 97, 579 P.2d 601 (App.1978), decided by Division One of this court, that a secured creditor in circumstances such as we have here, has no possessory interest in the collateral but "merely an option to claim possession." It is well settled that a secured creditor, upon default of the debtor, has an immediate right to possession of the collateral and can maintain an action for conver-

sion when the debtor transfers the security. *Boudreau v. Borg-Warner Acceptance Corporation*, 616 F.2d 1077 (9th Cir. 1980); *American National Bank & Trust Company of Mobile v. Robertson*, 384 So.2d 1122 (Ala. Civ.App.1980); *Patrons State Bank and Trust Company v. Shapiro*, 215 Kan. 856, 528 P.2d 1198 (1974); *Hartford Financial Corporation v. Burns*, 96 Cal.App.3d 591, 158 Cal.Rptr. 169 (1979); *United States v. Topeka Livestock Auction, Inc.*, 392 F.Supp. 944 (N.D.Ind.1975); *Chemical Bank v. Miller Yacht Sales*, 173 N.J.Super. 90, 413 A.2d 619 (1980); *Get It Kwik of America, Inc. v. First Alabama Bank of Huntsville, N.A.*, 361 So.2d 568 (Ala.Civ.App.1978); *American National Bank. v. Quad Construction, Inc.*, 31 Colo.App. 373, 504 P.2d 1113 (1972).

█ It has been recognized that the most important remedy available to a secured creditor is the right to take possession of the collateral following the debtor's default. *Karp Bros., Inc. v. West Ward Savings and Loan Association of Shamokin*, 440 Pa. 583, 271 A.2d 493 (1970); *Murdock v. Blake*, 26 Utah 2d 22, 484 P.2d 164 (1971). A secured creditor is not required to elect a remedy. He can take any permitted action or combination of actions. *Pruske v. National Bank of Commerce of San Antonio*, 533 S.W.2d 931 (Tex.Civ.App.1976); *Hubbard v. Lagow*, 576 S.W.2d 163 (Tex.Civ. App.1979). The *Hubbard* court indicated, however, that a secured creditor should not be permitted to harass the debtor. We do not have a situation of debtor harassment here. Although Citicorp is entitled to only one satisfaction, it may seek such satisfaction in different ways. *Pruske*, supra. It sustained a loss by reason of the dealer's conversion and thus was entitled to recover against the bond.

Affirmed.

HATHAWAY, C. J., and BIRDSALL, J., concur.