615 F.Supp. 72 (1985)
C.H. BETTERTON, Plaintiff,
v.
FIRST INTERSTATE BANK OF ARIZONA, N.A., et al., Defendants.
No. 84-0871C(6).
United States District Court, E.D. Missouri.
August 12, 1985.
Norman A. Selner, Leonard Komen, Selner, Glaser & Komen, St. Louis, Mo., for plaintiff.
Joseph E. Rebman, St. Louis, Mo., Jeffrey L. Willis, Streich, Lang, Weeks & Cardon, Phoenix, Ariz., for defendants.

MEMORANDUM
GUNN, District Judge.
This case is before the Court on defendants' motion for summary judgment. *73 Plaintiff, an over-the-road driver and resident of Missouri, brought an action in five counts against defendants, an Arizona bank and a loan officer of the bank. The suit arises out of the repossession and sale by the bank of a tractor and trailer purchased by plaintiff with funds loaned to him by the bank and in which the bank maintained a security interest.
The following facts are not disputed: In July 1982 and in November 1982, defendant bank loaned plaintiff a total of $51,900.00 for the purchase of a commercial trucktractor and trailer. On each date, plaintiff executed an installment note in favor of the bank for the amount due and a security agreement granting the bank a security interest in the vehicles as collateral for the two loans. The bank also advanced to plaintiff an unsecured loan in the amount of $5,000.00 which was used to pay taxes and license costs incident to the operation of the truck.
Plaintiff immediately failed to make payments as called for by the notes and was declared in default. In January 1983 and again in September 1983, following meetings between plaintiff and defendant Stiles, who had been assigned by the bank to handle plaintiff's loan account, the parties entered into written revision agreements extending the terms of the notes. Plaintiff, however, failed to meet the revised terms and remained in default. Sometime prior to the September 1983 revision agreement, defendant Stiles ordered repossession of the tractor and trailer through Auto Recovery Bureau, a repossession company.
On February 15, 1984, plaintiff and Stiles again met at the bank in Phoenix to discuss plaintiff's indebtedness. It is what plaintiff contends transpired at this meeting that forms the gravamen of his action. It is not disputed that defendant Stiles handed plaintiff a letter demanding payment in full of the principal and interest due on the three loans and stating that unless such amount was immediately paid in full, the bank would proceed with whatever action it deemed necessary to enforce collection of the debt. Plaintiff informed Stiles that the vehicles were in a repair shop in Tucson. Plaintiff asserts that Stiles then told him that if he would have the truck repaired and recover it from the shop and further agree to have his broker make payments on his behalf directly to the bank, the bank would forego repossession. Plaintiff agreed to have the necessary repairs made and to arrange with the broker to make the payments on the notes.
Stiles telephoned the broker, who was aware that plaintiff was in default and that repossession was imminent. Plaintiff directed the repair shop to fix the vehicles at a cost of $627.62. Plaintiff asserts that Stiles made the above statements knowing that the repossession order was in effect. Plaintiff further asserts that they were made for the purpose of locating the vehicles and facilitating repossession.
On the following day, February 16, 1984, after plaintiff had retrieved his tractor and trailer, the vehicles were repossessed from him in Phoenix by Auto Recovery Bureau. They were sold in March 1984 by public sale, and the proceeds were applied to the three loans.
Plaintiff then filed this suit alleging in Count I that defendant Stiles' February 15, 1984 statement to him that the bank would forego repossession was a fraudulent misrepresentation; in Count II that the bank breached an oral contract not to repossess the truck; in Count III that the repossession constituted a conversion; and in Count V that the bank breached its duty, imposed by the Arizona Commercial Code, to exercise good faith in enforcing collection of its loans.[1]
In considering defendants' motion for summary judgment the Court is required to view the facts and the inferences reasonably drawn therefrom in the light most *74 favorable to plaintiff. See Buller v. Buechler, 706 F.2d 844, 846 (8th Cir.1983). For purposes of this review, therefore, the Court will assume that defendant Stiles made the disputed statements and that she made them for the purpose of facilitating repossession of the truck.
The substantive law of Arizona applies to our inquiry in the present case. See Potter v. St. Louis-San Francisco Ry., 622 F.2d 979 (8th Cir.1980); Farm Bureau Co-op Mill & Supply v. Blue Star Foods, 238 F.2d 326 (8th Cir.1956).

Count IFraud
Under Arizona law, actionable fraud requires the concurrence of the following elements: a representation, its falsity, its materiality, speaker's knowledge of its falsity or ignorance of its truth, his intent that it should be acted upon by hearer and in a manner reasonably contemplated, hearer's ignorance of its falsity, his reliance on its truth, his right to rely thereon, and his proximate and consequent injury. Wagner v. Casteel, 136 Ariz. 29, 663 P.2d 1020, 1022 (Ct.App.1983). A failure to prove any one of these elements is fatal to a case sounding in fraud. Smith v. Don Sanderson Ford, Inc., 7 Ariz.App. 390, 439 P.2d 837, 840 (1968).
This Court does not accept defendants' argument that Stiles' statement was a promise to perform in the future and, as such, could not constitute actionable fraud. A promise, when made with the present intention not to perform it, is a misrepresentation which can give rise to an action of fraud. Pinnacle Peak Developers v. TRW Investment Corp., 129 Ariz. 385, 631 P.2d 540, 543-44 (Ct.App.1980). But plaintiff's action for fraud must fail, because he cannot establish the essential element of damages.
Plaintiff claims injury in that, in reliance on Stiles' representations, he incurred a debt in the amount of $627.62 for the repair of the vehicles. The security agreements provide that "(s)o long as any Indebtedness remains unpaid, Debtor ... will keep the collateral in good condition and repair." There can be no recovery in fraud for a deception by which a person is induced to do something which he is already bound to do. Berry v. Robotka, 9 Ariz.App. 461, 453 P.2d 972, 979 (1969). Under the security agreements, plaintiff was contractually obligated to make the repairs which he ordered.[2] Hence, he has incurred no damage by ordering vehicle repairs for which he was contractually compelled to make irrespective of defendant Stiles' alleged representations.
Plaintiff also asserts injury to his business reputation and credit as a result of Stiles' telephone conversation with the broker. It is undisputed, however, that the broker already knew that plaintiff had defaulted on his loans and was threatened with repossession. Other alleged damages (lost income, lost title to the truck) are not proximate and consequent results of plaintiff's reliance on Stiles' statements.

Count II  Breach of Contract
Plaintiff asserts that the February 15, 1984 meeting between him and Stiles effectively modified the terms of his written agreements with the bank, and that the repossession breached this new oral contract. Under Arizona law, a written contract may be modified by subsequent oral changes when the changes are supported by new consideration. Coronado Co. v. Jacome's Dept. Store, 129 Ariz. 137, 629 P.2d 553, 555 (Ct.App.1981). Such consideration cannot be something which a party is already bound to do. Perry v. Farmer, 47 Ariz. 185, 54 P.2d 999, 1001 (1936). The Court concludes that the bank's alleged promise to forego immediate repossession is unsupported by any consideration running from plaintiff to the bank. He was contractually bound to make the payments, and he gave up nothing for the alleged oral *75 promise which he says was exacted from the bank.

Count III  Conversion
Although the Uniform Commercial Code as adopted by Arizona, Ariz.Rev.Stat. Ann. § 47-1101 et seq. (1984), does not expressly provide for an action in conversion arising out of the improper sale of repossessed property, Arizona courts have construed the statute as permitting such an action. See Day v. Schenectady Discount Corp., 125 Ariz. 564, 611 P.2d 568 (Ct.App. 1980). The Court has concluded above that the repossession of plaintiff's tractor-trailer was not fraudulent or in breach of contract. Thus, any action in conversion by plaintiff must be based on the impropriety of the sale itself. As Count IV pleads no facts upon which such a finding could be based, it is ripe for summary judgment.

Count V  Bad Faith
Plaintiff argues that defendants' actions breached the duty to exercise good faith imposed by the Uniform Commercial Code and that such breach has been recognized by various courts as tortious. The Court's discussion on plaintiff's fraud claim disposes of this argument.
Accordingly, summary judgment is entered in favor of defendants on Counts I, II, III and V of plaintiff's petition.
NOTES
[1] Count IV, which is not subject to this summary judgment, alleged that the bank breached the security agreements by not conducting the public sale in a commercially reasonable fashion. Also not under consideration now is defendant bank's counterclaim for the deficiency not covered by the proceeds of the public sale.
[2] The Court notes that the record is destitute of evidence that the item of repair has ever been paid or that a mechanic's lien has been asserted.