**J. Montjoy TRIMBLE, Agent and Attorney-In-Fact for Dan Stathatos and Sam Malisos, Movant,**

*v.*

**NORTH RIDGE FARMS, INC., Combs Stallions, Inc., and Anita Arbour, Respondents.**

Supreme Court of Kentucky.

Sept. 26, 1985.

Rehearing Denied Dec. 19, 1985.

J. Montjoy Trimble, Trimble & Henry, Lexington, for movant.

Robert S. Miller, Miller, Griffin & Marks, Stephen L. Barker, Sturgill, Turner & Truitt, Lexington, for respondents.

VANCE, Justice.

The question is whether a provision in the syndicate agreement of a syndicated stallion which provides that nominations of a mare to be bred to the stallion by the owner of a share in the syndicate may be sold, exchanged, or otherwise transferred or assigned, permits the purchase of a breeding season free and clear of a purchase money security interest of the syndicator by virtue of U.C.C. 9–306.

The stallion, Affirmed, owned by Louis Wolfson, was syndicated and ownership was divided into 36 equal shares. Each member of the syndicate was entitled to one free nomination of a mare to be bred to the stallion for each breeding season for each fractional share owned.

Anita Arbour purchased a fractional share in the syndicate from Wolfson in February, 1980. The purchase price was $400,000.00. $100,000.00 was paid in cash, and a promissory note for the balance of $300,000.00 payable to Wolfson was executed by Arbour. The note was payable in four installments of $75,000.00 each, the first installment due and payable on December 1, 1980. Wolfson secured and properly perfected a security interest in a 1/36 undivided fractional interest in the thoroughbred horse Affirmed.

The syndicate agreement contained the following provision with reference to the right to shareowners to nominate mares to be bred to the stallion:

"Nominations may be sold, exchanged or otherwise transferred or assigned, and written notice of such transfer shall be given to the syndicate manager within ten (10) days thereafter; provided, however, that nominations may not be cumulated from one breeding season to a subsequent breeding season."

On May 26, 1980, Anita Arbour conveyed her 1982 nomination to respondent, North Ridge Farms, Inc. Subsequently, Arbour defaulted on her payment of the installment of the note to Wolfson due on December 1, 1980, and Wolfson repossessed her share of the stallion. The movants, Stathatos and Malisos, purchased the share when it was sold by Wolfson to satisfy his lien. They stand in the same position as did Wolfson with regard to the priority of Wolfson's security interest.

As a result of the foregoing transactions, both North Ridge Farms, Inc. and Stathatos and Malisos claimed the right to nominate a mare to be bred to Affirmed in the 1982 breeding season.

In litigation instituted to resolve the dispute, the Fayette Circuit Court, by summary judgment, determined the matter in favor of movants, and they obtained the breeding season.

On appeal, the Court of Appeals reversed the judgment on the ground that K.R.S. 355.9–306(2) was applicable and permitted the sale free of the security interest of Wolfson. We affirm the decision of the Court of Appeals.

K.R.S. 355.9–306(2) provides:

"Except where this article otherwise provides, a security interest continues in collateral notwithstanding sale, exchange, or other disposition thereof by the debtor *unless his action was authorized by the secured party in the security agreement or otherwise,* and also continues in any identifiable proceeds including collections recovered by the debtor." (Emphasis added.)

■ The parties agree that the Uniform Commercial Code is applicable to this transaction and do not dispute the fact that the right to nominate was collateral secured by the Security Agreement. Movants do not agree, however, that the sale of the collateral was free and clear of the security interest by reason of K.R.S. 355.9–306(2) because, they contend, there was no authorization for the sale of the collateral when in default.

Movants point out that section 6.3(d) of the syndicate agreement prohibits the sale of a nomination at public auction and thus limits that provision which authorizes sales or transfers of a nomination. They reason from this that the authority to sell or transfer is not absolute, but limited, and should be limited to prohibit a sale when in default of a security agreement.

Nothing in the language of the syndicate agreement, to which Wolfson was a party, limits the authority to sell or assign a nomination to parties not in default of a security agreement with Wolfson. That specific language could have been, but was not, made a part of the syndicate agreement.

Movants cite *Farmers State Bank, Aurora v. Edison Non-Stock Cooperative Assn.,* 190 Neb. 789, 212 N.W.2d 625, (1973), for a holding that a sale of collateral while in default did not defeat the security interest but in that case the security agreement provided that the debtor should have the right to sell the collateral in the regular course of business *so long as no element of default has occurred.*

Furthermore, although the movants' brief states that Arbour was in default to Wolfson at the time she sold the 1982 nomination to North Ridge Farms, Inc., in May, 1980, the alleged default does not clearly appear from the record nor does the brief explain the particulars of the alleged default.

We note that the first installment of the note to Wolfson was not due until December 1, 1980, and thus was not in default when Arbour sold the nomination.

The security agreement required Arbour to keep in force mortality insurance in an amount equal to the balance of the indebtedness, but we do not find from the record that Arbour defaulted on this obligation.

The syndicate agreement required each member to pay to the syndicate manager the prevailing rate for maintenance to be billed as soon after the end of each calendar quarter as is reasonably practical and to be paid within 30 days after the date of the statement. It further provided that any member more than two quarters in arrears in the payment of money due the syndicate as shown by the statement furnished, should not be permitted to sell, exchange or trade a nomination until the obligation had been satisfied.

Because Ms. Arbour did not own a share until February, 1980, her second calendar quarterly statement would not have been in arrears before July 30, 1980, and was not in default when she sold the nomination. She was, of course, in default when it came time to use the nomination, but at that time she no longer owned the right to nominate, having sold it to North Ridge Farms, Inc. under express authorization of the syndicate agreement. The right to sell the nomination, or to use any such nomination sold, was not limited in either the syndicate agreement or the security agreement, in the event of default on the obligation to Wolfson. The authorized sale of the collateral extinguished the security interest in the collateral.

The judgment of the trial court was a final and appealable determination only as to whether movants or the respondent North Ridge Farms, Inc. should have the use of the 1982 breeding season. That season has expired and was used by movants. The record indicates that North Ridge Farms, Inc. has amended its pleading to seek damages from movants for interference with its right of nomination. The parties have briefed the question of whether movants have any liability to North Ridge Farms, Inc., but inasmuch as this question has yet to be determined by a judgment of the trial court, the matter is not properly before this court for review.

The decision of the Court of Appeals is affirmed.

STEPHENS, C.J., and AKER, GANT, LEIBSON and VANCE, JJ., concur.

STEPHENSON, J., dissents by separate opinion in which WINTERSHEIMER, J., joins.

STEPHENSON, Justice, dissenting.

I do not believe that KRS 355.9–306(2) should be given a broad enough interpretation so as to vitiate the security agreement here.

The syndicate agreement authorizes the sale of nominations for breeding seasons and further provides certain restrictions on the sale of fractional interests. I do not understand why, by inference, we should say the sale of a nomination of a breeding season should be free and clear of the security interest just for the reason the agreement did not provide otherwise. Presumably, the same holding would apply to a sale of a fractional interest. These provisions were simply between the owners of the shares as to rights and responsibilities without affecting any outstanding security interest.

We should afford more dignity to a recorded security interest than the majority has by its opinion.

Any authorization in accordance with the statute should be specific and not by inference.

Here, by the interpretation of the majority, the entire life of the nominations could be sold, thus completely defeating the security interest. I would require a clear showing that this was the intent of the parties rather than observe that the matter could have been provided against.

Accordingly, I dissent.

WINTERSHEIMER, J., joins in this dissent.