**C.H. BETTERTON, Appellant,**

v.

**FIRST INTERSTATE BANK OF ARIZONA, N.A., a National Banking Association and Paula Stiles, Appellees,**

v.

**C.H. BETTERTON, Appellant.**

**C.H. BETTERTON, Appellee,**

v.

**FIRST INTERSTATE BANK OF ARIZONA, N.A., a National Banking Association and Paula Stiles, Appellants,**

v.

**C.H. BETTERTON, Appellee.**

Nos. 85–2410, 86–1213.

United States Court of Appeals, Eighth Circuit.

Submitted June 9, 1986.

Decided Aug. 29, 1986.

Rehearing Denied Sept. 26, 1986.

Leonard Komen, Olivette, Mo., for appellants.

Keith C. Zagar, St. Louis, Mo., for appellee.

Before LAY, Chief Judge, ARNOLD, Circuit Judge, and STROM,* District Judge.

ARNOLD, Circuit Judge.

This diversity action was brought by plaintiff C.H. Betterton following the repossession and sale of an over-the-road tractor and trailer by his creditor, defendant First Interstate Bank of Arizona. Betterton appeals the District Court's grant of summary judgment to the defendants on his claims for breach of contract, fraud, conversion, and tortious breach of the duty of good faith. 615 F.Supp. 72 (E.D.Mo. 1985). He also appeals the entry of judgment for the defendants following a jury trial on his claim for breach of the security agreement and failure to conduct the foreclosure sale in a commercially reasonable manner and on the Bank's counterclaim for a deficiency judgment. The Bank and its co-defendant, bank officer Paula Stiles, appeal the District Court's denial of their motion for attorneys' fees as untimely. We affirm in part and reverse in part.

I.

In 1982, Betterton bought a 1979 Peterbilt tractor and a 1978 utility trailer, financing both purchases through the First Interstate Bank. Betterton executed a promissory note and a security agreement with the Bank for each purchase; the tractor

note was for $38,000 and the trailer note was for $13,900. Betterton also received an unsecured $5,000 loan from the Bank, which he used to pay for the truck's taxes and licenses.

From the outset, Betterton had difficulty making his loan payments. He missed a number of payments and was declared in default. In January 1983 and again in September 1983, after negotiations between Betterton and bank officer Stiles, whom the Bank had designated to handle Betterton's account, the parties entered into revision agreements extending the terms of the notes. However, Betterton did not meet the revised terms and remained in default. Sometime before the September 1983 revision, Stiles ordered repossession of the tractor and trailer through Auto Recovery Bureau, a repossession company.

On February 15, 1984, Betterton and Stiles again met at the Bank's offices in Phoenix, Arizona. Betterton's complaint focuses upon what he alleges transpired at this meeting and in a later phone conversation with Stiles; not surprisingly, the defendants dispute the accuracy of his account. However, since the primary issue here is whether summary judgment was properly granted, we must for present purposes accept Betterton's account as true.

According to Betterton, when he met with Stiles that day, she first handed him a letter demanding payment in full on the loans and warning that absent full payment the Bank would immediately take whatever action it deemed necessary to collect the debt. Betterton informed Stiles that the truck was in a Tucson repair shop. He then suggested to Stiles that he could bring the loan up to date and keep his payments current by having the broker for whom he worked take the payments out of his paycheck and transfer them directly to the bank. (A "broker," in this context, seems to be someone who secures contracts for transportation services and sees that

* The Hon. Lyle E. Strom, United States District Judge for the District of Nebraska, sitting by designation.

they are paid for.) Betterton gave Stiles the names and addresses of his broker and the Tucson garage that had his truck. Stiles, Betterton asserts, told him to call her back later that day and she would give her answer to his proposal.

After the meeting Stiles phoned Betterton's broker, Allen Steele, and asked whether he would be willing to take money out of payments due Betterton and pay it to the Bank on Betterton's behalf. Steele agreed to cooperate in such an arrangement. Stiles then phoned the Tucson garage and informed it that Betterton would be able to keep the truck and that it was all right to proceed with repairs on the truck. Both Steele and the garage phoned Betterton after they received Stiles's call and informed him of their conversation with Stiles. Betterton then phoned Stiles, who, he contends, told him that if he would have the truck repaired and recover it from the shop and further agree to have his broker make payments on his behalf directly to the Bank, the Bank would forego repossession. Betterton readily agreed, and set about having the repairs made.

Stiles did not tell Betterton that the Bank had ordered repossession of the tractor-trailer rig through Auto Recovery Bureau. More importantly, she did not cancel this order after reaching the new agreement with Betterton. The very next day, while Betterton was making a delivery in Phoenix, an agent of Auto Recovery Bureau induced him to leave his locked truck unattended; when he returned a moment later, the truck had been repossessed. The tractor and trailer were sold at a foreclosure sale in March 1984, and the proceeds were applied to the three loans. Before the sale, the Bank returned a number of items of personal property found in the truck to Betterton; however, Betterton asserts that the Bank failed to return several items of personalty, including a citizens' band radio.

Betterton's complaint requested relief on five counts. Count I alleged that Stiles's statement that the Bank would let him keep the truck was fraudulent. Count II alleged breach of contract, based on Stiles's promise to let him keep his truck. Count III alleged that the repossession and sale of the tractor and trailer and of Betterton's personalty constituted conversion. Count IV alleged breach of the security agreement and failure to conduct a commercially reasonable sale of the repossessed collateral. Count V alleged a tortious violation of the duty of good faith imposed by Uniform Commercial Code § 1–203, A.R.S. § 47–1203. The District Court granted Stiles and the Bank summary judgment on Counts I, II, III, and V. 615 F.Supp. 72. The parties proceeded to trial before a magistrate on Count IV and on the Bank's counterclaim for a deficiency judgment. The magistrate directed a verdict for Stiles and entered judgment in favor of the Bank in accord with the jury's verdict of $15,942.31. The defendants' subsequent motions for an award of attorneys' fees were denied as untimely.

## II.

■ We turn first to Betterton's breach of contract claim, Count II of his complaint. All parties agree that Arizona law governs this case. The District Court granted summary judgment on this claim because it thought that Stiles's promise to forego recovery was not supported by consideration. 615 F.Supp. at 74. The Court reasoned that Betterton, in his February 15 exchange with Stiles, had not promised to do anything he was not already obligated to do. The Court noted in particular that while Betterton promised to have repairs made on the truck, under the terms of his security agreement he was already under a duty to keep the truck in good repair. The District Court did not discuss in this regard the effect of Betterton's further promise to have his broker make payments directly to the Bank.

Under Arizona law,

A promise lacks consideration if the promisee is under a pre-existing duty to counter-perform. 1A Corbin on Contracts, Sec. 171 (1963). The rule is inapplicable, however, if the promisee undertakes any obligation not required by the

pre-existing duty, even if the new obligation involves almost the same performance as the pre-existing duty. *Id.,* Sec. 192.

*Leone v. Precision Plbg. & Heat. of So. Arizona,* 121 Ariz. 514, 591 P.2d 1002, 1003 (Ariz.App.1979). See *Perry v. Farmer,* 47 Ariz. 185, 54 P.2d 999, 1001 (1936); see also Restatement (Second) of Contracts, § 73 (1981); 1 Williston on Contracts, § 121 (3d ed. 1957). Further, Arizona's courts ordinarily do not inquire into the adequacy of consideration, except where gross inadequacy may be relevant to issues of capacity, fraud, duress, or the like. *Carroll v. Lee,* 148 Ariz. 10, 712 P.2d 923, 927 (1986), citing Restatement (Second) of Contracts, § 79, comment c. See 1 Williston on Contracts, §§ 99–104A.

Applying these principles to the case before us, we agree with the District Court that Betterton's promise to have the truck repaired did not provide consideration to support Stiles's promise. However, while Betterton was also obligated to make payments on the loans, he was under no pre-existing duty to have his broker deduct funds from his paycheck and pay them to the Bank on his behalf. Nothing in his loan agreements with the Bank or elsewhere required him to make this arrangement with his broker or to approve or facilitate this sort of garnishment of his income. We therefore hold that Betterton's promise to have his broker subtract money owed him from his paycheck and transfer it to the Bank supplied the consideration necessary to make Stiles's promise binding, and that summary judgment was improperly granted as to Count II.[1]

## III.

Our disposition of Betterton's contract claim goes far towards resolving the issues concerning his fraud claim, Count I, and his conversion claim, Count III.

■ The District Court rejected Betterton's fraud claim on essentially the same basis it invoked in rejecting the contract claim. The Court noted that " '[t]here can be no recovery in fraud for a deception by which a person is induced to do something which he is already bound to do.' " 615 F.Supp. at 74, quoting *Berry v. Robotka,* 9 Ariz.App. 461, 453 P.2d 972, 979 (1969). Observing that Betterton was already contractually obligated to keep his truck repaired, the Court granted summary judgment on the fraud claim. We again point out that Stiles's representations also induced Betterton to arrange with his broker to establish the sort of garnishment procedure discussed above, an arrangement Betterton was not obligated to make. We therefore conclude that Count I must also be reinstated.

■ The District Court acknowledged that Arizona recognizes a conversion cause of action where property is improperly repossessed or repossessed property is improperly sold. 615 F.Supp. at 75, citing *Day v. Schenectady Discount Corp.,* 125 Ariz. 564, 611 P.2d 568 (Ariz.App.1980). However, having rejected Betterton's breach of contract and fraud claims, the District Court concluded that the repossession of the tractor and trailer was not improper, and granted summary judgment on that basis. Since we reverse the District Court's dismissal of Betterton's fraud and contract claims, we reverse the dismissal of the conversion claim as well. We further note that Betterton also claimed that certain items of personal property were taken when the truck was repossessed and were not returned to him, a claim the District Court did not address in its opinion. We hold that Betterton may maintain a conversion action on this claim as well.

## IV.

The District Court granted summary judgment on Count V of Betterton's com-

---

1. The defendants argue that Betterton's claim is barred because the Bank had a right to repossession under Arizona law, citing *Citicorp Homeowners, Inc. v. Western Surety Co.,* 131 Ariz. 334, 641 P.2d 248 (Ariz.App.1981). This argument simply misses the point of Betterton's claim, which is that the Bank, through Stiles, made a contract with Betterton whereby it waived this right.

plaint, his claim that the defendants tortiously breached the duty of good faith imposed by Uniform Commercial Code § 1–203, A.R.S. § 47–1203, for the same reason that it rejected his fraud claim. We affirm, but on a different basis.

■ Several courts have recognized remedies in tort, rather than in contract, for breach of the U.C.C. § 1–203 duty of good faith. See, *e.g., First National Bank in Libby v. Twombly,* 689 P.2d 1226 (Mont. 1984). However, Betterton has cited, and we can find, no Arizona authority recognizing such a claim. Arizona does recognize a bad-faith tort for the willful refusal of an insurance company to pay a valid claim by its insured, but the Arizona Supreme Court has recently specifically refused to extend this tort beyond the insurance context. *Wagenseller v. Scottsdale Memorial Hospital,* 147 Ariz. 370, 710 P.2d 1025 (1985). In *Wagenseller,* which involved an employment contract, the Court emphasized that "the rationale for permitting tort recovery in insurance contract disputes and not in disputes involving other contracts has been founded largely upon the existence of a 'special relationship' between insurer and insured." 710 P.2d at 1040.

In light of the absence of any Arizona recognition of a tort remedy for breach of the UCC duty of good faith, and of the Arizona Supreme Court's demonstrated antipathy towards extension of the bad-faith tort beyond the insurance context, we conclude that any breach of the duty of good faith here would invoke only contractual remedies. We hold that summary judgment for the defendants on Count V was properly granted.

### V.

We come, finally, to Count IV of Betterton's complaint, his claim that the security agreement was breached and that the foreclosure sale was improper, and to the Bank's counterclaim for a deficiency judgment, both of which were resolved in the Bank's favor after a trial. Because we have resurrected Betterton's claims for breach of contract, fraud, and conversion, the District Court's judgment on Count IV and on the counterclaim must necessarily be vacated. Of course, the District Court's judgment on these matters may be reinstated in the event that Betterton does not prevail on any of the claims we have revived.

Because we vacate the District Court judgment on these claims, we find it unnecessary to reach the defendants' appeal of the denial of their motion for attorneys' fees.

### VI.

In sum, we hold that summary judgment was improper as to Betterton's contract, fraud, and conversion claims, we affirm the grant of summary judgment on Betterton's tortious-bad-faith claim, and we vacate the judgment on Count IV and the Bank's counterclaim pending resolution of Betterton's other claims. We note that the defendants have raised several contentions not addressed in this opinion, including arguments that Betterton waived his claims by signing a release shortly after the repossession and that Stiles's representations were too indefinite to form the basis of a contract or to justify reliance. We express no view on these contentions, since they raise factual issues not considered by the District Court and not properly resolved by us on appeal in the first instance; the defendants remain free to raise them before the District Court on remand.

The decision of the District Court is affirmed in part and reversed in part, and the cause is remanded for further proceedings consistent with this opinion.

It is so ordered.