427 So.2d 1042 (1983)
MOTOROLA COMMUNICATIONS AND ELECTRONICS, INC., Appellant,
v.
NATIONAL PATIENT AIDS, INC., et al., Appellees.
No. 81-1411.
District Court of Appeal of Florida, Fourth District.
March 2, 1983.
Rehearing Denied March 31, 1983.
Robert L. Beals of DiGuilian, Spellacy & DiChiara, Fort Lauderdale, for appellant.
Stephen M. Goodman, Margate, for appellees.
GLICKSTEIN, Judge.
Motorola appeals a final judgment entered in favor of two signatories who guaranteed obligations incurred by Jefferson Emergency Medical Services, Inc. (JEMS), the purchaser of communications equipment from Motorola for use in Jefferson Parish, Louisiana. The final judgment against Motorola followed entry of summary judgment upon the issue of liability in its favor. This is indeed a most unusual circumstance.
We do not question the trial judge's right to vacate non-final orders prior to final judgment for legitimate reasons;[1] but in light of the turnabout in result, the fact that the acting circuit judge who tried the case admittedly never reviewed the court file prior to trial appropriately had an initial chilling effect upon this court's consideration of the case. Further, we have tried to plumb the thinking of Motorola's attorney in the conduct of the trial to see why *1043 the issue of liability was tried after summary judgment was granted. The only professionally prudent explanation we perceive is that the attorney felt it was his obligation to inform the trial court that, although summary judgment had been awarded upon facts as they were represented by the pleadings, at the time of trial the facts, because of intervening events, were substantially different than how the pleadings had represented them.
At the time the original trial judge entered summary judgment in favor of Motorola and against two guarantors,[2] the complaint was a simple action on the two executed guaranties. It alleged that the principal debtor, JEMS, which was not a party to the action, had paid nothing for the equipment it had purchased; and that there was $115,188.02 due and owing. The two guarantors' affirmative defenses included the allegation that Motorola had chosen its remedy by repossessing the equipment and had failed to mitigate its damages after repossession. There were no pleadings in the court file to indicate resale by Motorola of any of the repossessed equipment; or counterclaims asserting any form of set-off;[3] or claims for relief pursuant to section 679.507(1), Florida Statutes (1977);[4] or any allegation supporting or seeking a deficiency judgment; or anything of a defensive nature filed by the guarantors that would have been directed toward a claim for deficiency judgment. The guarantors did not appeal the non-final order which awarded summary judgment to Motorola on the issue of liability.[5]
At the beginning of trial, Motorola's attorney informed the successor trial judge that, because summary judgment had been entered in his client's favor on the issue of liability, the proceedings were limited to a question of damages.[6] However, the attorney then informed the trial judge as follows:
The Plaintiff will submit evidence to show that reasonable notice of repossession and the intent to sell privately was given, and that a reasonable, commercially reasonable disposition has been made of that which was repossessed. We will, then, offer evidence as to the amount by which the repossessed collateral should be used as a set-off to the total indebtedness. The total indebtedness being a matter of stipulation.
THE COURT: You are talking about deficiency.
[ATTORNEY FOR MOTOROLA]: Yes, sir. Deficiency judgment against the guarantors.
We would submit, of course, that the Court may well anticipate that the Defendant *1044 will want to show that we did nothing reasonable, and that whatever we suggested as an approximate price for deficiency and set-off, is not a fair and commercially reasonable matter. That is what lawsuits are made out of.
Such opening statement disregarded not only the summary judgment[7] but also the original action on the debt; plainly this appeared to be an undertaking to establish, and to assume the burden of proving, liability for a deficiency judgment. See Bondurant v. Beard Equipment Co., 345 So.2d 806 (Fla. 1st DCA 1977).
In his opening statement, the attorney for the two guarantors acknowledged that summary judgment had been entered against his clients, but recited that he intended to establish the absence of commercial reasonableness in any resale of the subject equipment by Motorola, specifically, the failure of Motorola to give the guarantors notice of such resale. In short, the parties' opening statements were not supported by any of the pleadings; and a variety of complex issues suddenly had emerged at trial, involving secured transactions under the Uniform Commercial Code, as codified in Florida by chapter 679, Florida Statutes (1977),[8] which was in effect when the cause of action arose in this case.
"Debtor" in section 679.105(1)(d), Florida Statutes (1977), is defined as "the person who owes payment or other performance of the obligation secured"; therefore, a guarantor is a debtor subject to the code. See Hepworth v. Orlando Bank & Trust Co., 323 So.2d 41 (Fla. 4th DCA 1975). *1045 As the "secured party," Motorola had numerous, cumulative alternatives available to it, as is outlined in J. White & R. Summers, Handbook of the Law Under the Uniform Commercial Code § 26-4 (1972). Further, as a secured party, Motorola was not faced with the problem of election of remedies under the code. See § 679.501(1), Fla. Stat. (1977).[9]
The foregoing principles, however, become difficult to apply in a fact pattern such as in the present case when, as the evidence revealed, some of the repossessed equipment has been sold and the remainder unsold; where the pleadings do not reflect the facts; and when the issues are not settled prior to trial. In attempting to determine if the trial judge properly applied these principles, certain matters have become evident.
First, the trial judge concluded that Motorola "did not attempt to effect a sale of the [subject equipment] ... in a commercially reasonable manner... ." The foregoing is not consistent with the language of section 679.504(3), Florida Statutes (1977), which refers to disposition  not attempted disposition. Further, although the transcript expressly reflects that the trial judge was concerned with the issue of notification to the debtors, the final judgment mentions "timely notice" only in connection with the trial judge's second conclusion; namely, that Motorola "did not satisfactorily establish the market value of the remaining security items as of the date of repossession... ." In summary, as to the items sold, it was incumbent upon the trial judge to determine what actually was sold and whether the secured party gave the debtors reasonable notification prior thereto;[10] *1046 or that the debtor had actual knowledge of the anticipated sale.[11] This the judge failed to do.
Second, the trial judge made no distinction between what was sold and what was retained by Motorola; nor did he determine the effect of that retention without resale vis-a-vis the code; or whether Motorola was entitled, at least, to nominal damages, notwithstanding its failure to provide what the judge considered to be proper proof of actual damages.[12]See Muroff v. Dill, 386 So.2d 1281 *1047 (Fla. 4th DCA 1980), petition for review denied, 392 So.2d 1377 (Fla. 1981). The entire aura of this case is so unsettling that we feel compelled to conclude that the parties' respective rights ultimately have been determined in an inappropriate manner.
Accordingly, we reverse and remand with specific direction that the case not only be retried but that the trial court take such action with respect to the pleadings as may be necessary to define clearly all of the issues prior to retrial.
DOWNEY, J., concurs.
ANSTEAD, J., dissents without opinion.
NOTES
[1] See Tingle v. Dade County Board of County Comm'rs, 245 So.2d 76 (Fla. 1971); Keathley v. Larson, 348 So.2d 382 (Fla. 2d DCA 1977), cert. denied, 358 So.2d 131 (Fla. 1978).
[2] There were actually three guarantors. The third guarantor, who was represented by counsel, had filed a notice of bankruptcy. The court file reflects notice of the trial being sent to such counsel. The record does not show whether the third guarantor's bankruptcy proceedings had terminated. His counsel was not served with a copy of the final judgment or notice of appeal.
[3] As to the filing of a counterclaim with which to allege a set-off, see Ocean Ridge Development Corp. v. Quality Plastering, Inc., 247 So.2d 72 (Fla. 4th DCA 1971); and Southeastern Builders, Inc. v. Joe Brashears Steel, Inc., 336 So.2d 1228 (Fla. 1st DCA 1976).
[4] Section 679.507(1), Florida Statutes (1977), provided:

If it is established that the secured party is not proceeding in accordance with the provisions of this part disposition may be ordered or restrained on appropriate terms and conditions. If the disposition has occurred the debtor or any person entitled to notification or whose security interest has been made known to the secured party prior to the disposition has a right to recover from the secured party any loss caused by a failure to comply with the provisions of this part. If the collateral is consumer goods the debtor has a right to recover in any event an amount not less than the credit service charge plus 10 percent of the principal amount of the debt or the time price differential plus 10 percent of the cash price.
[5] Florida Rule of Appellate Procedure 9.130(g) expressly permits "initial review of a non-final order on appeal from the final order in the cause."
[6] Ordinarily, even if Motorola had failed to come forward with any proof of loss or damage, with the summary judgment in hand it would have been entitled to nominal damages. See Muroff v. Dill, 386 So.2d 1281 (Fla. 4th DCA 1980), petition for review denied, 392 So.2d 1377 (Fla. 1981).
[7] Motorola's post-judgment motion for rehearing never mentions the summary judgment.
[8] At one point, Motorola's attorney unsuccessfully asserted that the Code was inapplicable because Louisiana had not adopted it, and that state's law applied. Such assertion has not been pursued on appeal. Generally, on the subject of secured transactions, see 1B P. Coogan, W. Hogan and D. Vagts, Secured Transactions Under the Uniform Commercial Code § 8.04 (M. Bender pub. 1982); J. White & R. Summers Handbook of the Law Under the Uniform Commercial Code chap. 26 (1972) [hereinafter cited as White & Summers]; 79 C.J.S. Supp. Secured Transactions §§ 102, 111, & 115 (1974).

White & Summers in section 26-4, at 962-63, state:
Consider the specific alternatives available to the creditor when the debtor defaults. Upon default the secured creditor will usually first seek a working arrangement or plan of compromise with the defaulting debtor. The possibility of repossession may provide considerable incentive for the debtor to agree to an amicable arrangement. Under the Code the creditor may choose between two basic methods of getting his money out of a balky debtor. First, he can seize the goods subject to his security interest and either keep them in satisfaction of the debt or resell them and apply the proceeds to the debt. Often a resale will result in a deficiency for which the debtor is usually liable. Alternatively, the creditor can ignore his security interest and obtain a judgment on the underlying obligation and proceed by execution and levy.
(Footnotes omitted.) Section 679.503, Florida Statutes (1977), provides for the secured party's right to take possession after default. Section 679.504, Florida Statutes (1977), provides for the secured party's right to dispose of the collateral after default. Section 679.505, Florida Statutes (1977), provides for the secured party's right to accept the collateral as discharge of the obligation.
The issue of "commercial reasonableness" arises out of section 679.504(3), which provides:
Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, and except in the case of consumer goods to any other person who has a security interest in the collateral and who has duly filed a financing statement indexed in the name of the debtor in this state or who is known by the secured party to have a security interest in the collateral. The secured party may buy at any public sale and if the collateral is of a type customarily sold in a recognized market or is of a type which is the subject of widely distributed standard price quotations he may buy at private sale.
[9] Section 679.501(1) provides:

When a debtor is in default under a security agreement, a secured party has the rights and remedies provided in this part, and except as limited by subsection (3) those provided in the security agreement. He may reduce his claim to judgment, foreclosure or otherwise enforce the security interest by any available judicial procedure. If the collateral is documents the secured party may proceed either as to the documents or as to the goods covered thereby. A secured party in possession has the rights, remedies and duties provided in s. 679.207. The rights and remedies referred to in this subsection are cumulative.
The general rule is recited in 79 C.J.S.Supp. Secured Transactions § 102, at 117 (1974):
Moreover, the plaintiff's election to exercise his self-help rights and take possession of the security does not preclude an action on the debt secured until all of the security has been sold in a commercially reasonable manner.
(Footnote omitted.) See also Keller v. La Rissa, Inc., 60 Hawaii 1, 586 P.2d 1017 (1978); McCullough v. Mobiland, Inc., 139 Ga. App. 260, 228 S.E.2d 146 (1976); and White & Summers, supra note 8, at § 26-4.
In Michigan National Bank v. Marston, 29 Mich. App. 99, 106-07, 185 N.W.2d 47, 50 (1970), the court said:
While Article 9 specifies a number of rights for the secured party, M.C.L.A. § 440.9501(1) (Stat.Ann. 1964 Rev. § 19.9501[1]) provides "the rights and remedies referred to in this subsection are cumulative." In discussing this point Professor Steinheimer has written:
"The code contemplates considerable flexibility in the default procedures which can be used by the secured party. He can (1) proceed under part 5 of article 9, (2) proceed under appropriate provisions of the security agreement and (3) proceed as a judgment creditor. These procedures are cumulative and may be employed without danger of election of remedies." M.C.L.A. § 440.9501, Practice Commentary, by Roy L. Steinheimer, Jr.
See also Olsen v. Valley National Bank of Aurora (1968), 91 Ill. App.2d 365, 371, 234 N.E.2d 547, 550, where the court notes:
"The majority rule, including Illinois, is founded on the rationale that a creditor is able to pursue any one of a number of remedies against a debtor until the debt is satisfied."
(Footnotes omitted.) See also Peoples Nat'l Bank of Wash. v. Peterson, 7 Wash. App. 196, 199, 498 P.2d 884, 886 (1972); aff'd en banc, 82 Wash.2d 822, 514 P.2d 159 (1973).
White & Summers, supra note 8, § 26-4, at 965, however, add this caveat:
The remedies may be "cumulative," but at some point the secured creditor must choose which remedy he will utilize and pursue that route to fruition. In other words, a secured creditor may first attempt to enforce his rights by one method and if that proves unsuccessful follow another one, but he should not be permitted to harass the debtor by simultaneously pursuing two or more of the several avenues of attack open to him. Neither case law nor the language of 9 501 authorizes a "double-barreled" attack upon the debtor.
(Footnotes omitted.)
[10] This court has held the failure to provide such notification to be a complete bar to a deficiency judgment. See Hepworth v. Orlando Bank & Trust Co., 323 So.2d 41 (Fla. 4th DCA 1975). Accord, Barnett v. Barnett Bank of Jacksonville, 345 So.2d 804 (Fla. 1st DCA 1977); and Turk v. St. Petersburg Bank & Trust Co., 281 So.2d 534 (Fla. 2d DCA 1973). The Third District Court of Appeal, in Bank of Oklahoma v. Little Judy Industries, Inc., 387 So.2d 1002, 1005 (Fla. 3d DCA 1980) (approved in Continental Center, Inc. v. Walter E. Heller & Co., 415 So.2d 751, 753 (Fla. 3d DCA 1982)), although not expressly receding from its earlier decision in Washington v. First National Bank of Miami, 332 So.2d 644 (Fla. 3d DCA 1976), in fact, adopted the following view which it quoted from Norton v. National Bank of Commerce, 240 Ark. 143, 149-50, 398 S.W.2d 538, 541 (1966):

"We do not agree with his contention that the bank's failure to give him notice of the intended sale completely discharged his obligation. For the most part the Code follows the theory formerly applicable to mortgages, by which the debtor was entitled to any surplus realized upon foreclosure and was liable for any deficiency. Section 85-9-504(2). The Code also provides that if the secured party has disposed of the collateral in a manner not in accordance with the Code `any person entitled to notification * * * has a right to recover from the secured party any loss caused by a failure to comply' with the provisions of the Code.
* * * * * *
"We think the just solution is to indulge the presumption in the first instance that the collateral was worth at least the amount of the debt, thereby shifting to the creditor the burden of proving the amount that should reasonably have been obtained through a sale conducted according to law. The extent to which the penalty set out in § 85-9-507(1) may be applicable in the case at bar is an issue that may depend upon the further development of the proof."
See also the authors' conclusion in Pass & Walker, Deficiency Judgment in Florida After a Commercially Unreasonable Sale of Collateral, 52 Fla.B.J. 720, 723-24 (1978), published prior to the decision in Little Judy Industries:
So far, most of the decisions employing the no deficiency rule, including the Florida decisions, have done so in simple "no notice" situations. While use of the no deficiency rule in such cases is probably inconsistent with the framework of Article 9, it is "unfair" at the expense of creditors with whom it is hard to sympathize. In any event, given the unanimity among the district courts of appeal, and therefore the diminished chances of Supreme Court resolution of the issue, use of the no deficiency rule in no notice cases is probably a fait accompli.
Similarly, while no one rightly sympathizes with the occasional creditor who willfully violates the Code in reselling repossessed collateral, he can be adequately dealt with through other supplementary principles under § 1-103.
However, when applied to a simple failure to satisfy the ill defined Code concept of commercial reasonableness, the no deficiency rule ignores the common-sense observation that commercial reasonableness is a matter of degree and opinion. If Turk is expanded to treat the small transgressor as harshly as those who willfully violate their Code duties or who fail to provide the debtor with the simply yet fundamental element of notice, the liberal and pragmatic spirit of the Code is lost.
Under an expansive reading of Turk, every creditor who repossesses goods and resells them to mitigate or obviate his losses does so at considerable peril and without satisfactory standards by which to chart his actions. The inequity of the no deficiency rule increases during recessionary periods, which tend to foster both defaults and repossessions, while reducing the probability that even a commercially reasonable resale will bring a "good" price.
Little, if anything, strongly favors the no deficiency rule, except a slavish adherence to common-law policies that have been displaced by Code standards. The central irony of the no deficiency rule is that it punishes by a common-law rule of result violations of a Code-imposed standard of conduct, the parameters of which have just begun to be charted.
[11] See Barnett v. Barnett Bank of Jacksonville, 345 So.2d 804 (Fla. 1st DCA 1977).
[12] Because we are remanding for retrial to be conducted only when the issues have been clarified by the pleadings, any subsequent review by this court will undoubtedly be of a record reflecting due preparation; and our concern with the trial court's evidentiary rulings upon value should be dissipated because of such preparation. For example, it is questionable from our reading of the final judgment whether the trial court considered the deposition of Motorola's witness who testified that once the equipment was installed in Jefferson Parish its value decreased 50%. Retrial should also answer our question of the trial court's reliance in the final judgment upon Little Judy Industries, Inc., which decision conflicts with that of this court in Hepworth v. Orlando Bank & Trust Co., particularly after the trial court recognized the conflict during trial.