455 So.2d 525 (1984)
AYARES-EISENBERG PERRINE DATSUN, INC., Edward M. Eisenberg, and Howard A. Ayares, Appellants,
v.
SUN BANK OF MIAMI, a Florida Banking Corporation, Appellee.
No. 83-2321.
District Court of Appeal of Florida, Third District.
August 21, 1984.
Rehearing Denied September 28, 1984.
*526 Kenneth J. Duckworth, Miami, for appellants.
Fowler, White, Burnett, Hurley, Banick & Strickroot and A. Rodger Traynor, Jr., Miami, for appellee.
Before SCHWARTZ, C.J., and BARKDULL and JORGENSON, JJ.
JORGENSON, Judge.
We reverse the final summary judgment under review and, because question of material fact remain, remand this action to the trial court for further proceedings consistent with the views expressed herein.
Ayares-Eisenberg Perrine Datsun [Ayares-Eisenberg] borrowed $30,000 from Sun Bank of Miami [Sun Bank] with which to purchase a computer system which, through a security agreement, served as collateral for the loan. Howard Ayares and Edward Eisenberg, officers of Ayares-Eisenberg, agreed to act as guarantors of the loan. Ayares-Eisenberg fell behind in its payments and Sun Bank took peaceable possession of the computer system and notified Ayares-Eisenberg, the debtor, and Ayares and Eisenberg, the guarantor-debtors [collectively the appellants] that the computer system would be sold by private sale to satisfy the outstanding $21,000 balance of the note. After eight months Sun Bank brought an action directly on the overdue note, seeking the entire outstanding balance of $21,000, and one month later, ostensibly unable to find a buyer for the computer system, gave it to a non-profit entity, without further notice to the appellants. The appellants balked, seeking the fair market value of the computer as an offset, alleging lack of notice and questioning the commercial reasonableness of the disposition. Eleven months after repossessing the computer, three months after beginning an action directly on the note, two months after giving the computer away and three days after the denial of its motion to strike the appellants' request for an offset, Sun Bank told the appellants that if they wanted the computer back they could come get it. The trial court then granted Sun Bank's motion for a summary judgment.
Article 9, Part 5, of the Uniform Commercial Code, Default, §§ 679.501-.507, Fla. Stat. (1981), provides that "[w]hen a debtor is in default under a security agreement, a secured party has the rights and remedies provided in this part... . He may reduce his claim to judgment, foreclose or otherwise enforce the security interest by any available judicial procedure," § 679.501(1), Fla. Stat. (1981). Thus, a secured creditor may avail himself of the default remedies provided in Part 5 and proceed against the collateral, as Sun Bank did by taking possession of the computer system, or the secured creditor may ignore the collateral and sue directly on the overdue note. Part 5 further states, however, that "[t]he rights and remedies referred to in this subsection are cumulative," § 679.501(1), *527 Fla. Stat. (1981). By electing one remedy a creditor is not thereby precluded from pursuing other available remedies.
Nevertheless, there is authority for the proposition that once a secured creditor has chosen a remedy he must pursue it to fruition and only when the chosen remedy proves unsuccessful may he attempt the satisfaction of his debt by another method. See J. White & R. Summers, Handbook of the Law Under the Uniform Commercial Code § 26-4 (1972), and the cases cited therein. We agree. The record reveals that eight months after taking possession of the collateral, but before the statutory provisions as to the disposition of the collateral had been fulfilled, Sun Bank began an action directly on the note. We hold that Article 9 does not give a secured creditor the authority to harass a debtor by pursuing contemporaneously two or more remedies, see J. White & R. Summers, and that Sun Bank's obviously premature action directly on the note was therefore precluded and may not be resumed until fulfillment of the statutory requirements with respect to the disposition of the collateral.
When Sun Bank began its initial attack, by taking possession of the collateral, section 679.504, Florida Statutes (1981), required, with certain exceptions not relevant here, compliance with the following provision: "reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor," § 679.504(3), Fla. Stat. (1981) (emphasis added). Section 679.504(3), Florida Statutes (1981), also requires that "every aspect of the disposition including the method, manner, time, place, and terms must be commercially reasonable." Sun Bank does not deny that it failed to give the requisite notice before disposing of the collateral, but a question of material fact remains as to whether the disposition was commercially reasonable.
It would be unnecessary to remand this action for further proceedings were we able to follow the majority rule in Florida that failure to give the notice required by section 679.504(3) precludes an action to recover the balance owed on a note after disposition of the collateral, see Barnett Bank of Tallahassee v. Campbell, 402 So.2d 12 (Fla.1st DCA 1981), review denied mem., 412 So.2d 463 (Fla. 1982); Barnett v. Barnett Bank of Jacksonville, 345 So.2d 804 (Fla.1st DCA 1977); Washington v. First National Bank of Miami, 332 So.2d 644 (Fla.3d DCA 1976); Hepworth v. Orlando Bank & Trust Co., 323 So.2d 41 (Fla.4th DCA 1975); Turk v. St. Petersburg Bank & Trust Co., 281 So.2d 534 (Fla.2d DCA 1973). We find, however, that the legislature has provided other relief which will require a remand for further proceedings.
Section 679.507(1), Florida Statutes (1981) (originally enacted as Act of Jan. 1, 1967, ch. 65-254, § 1, I, pt. 1 1965 Fla. Laws 684, 936), provides that
[i]f it is established that the secured party is not proceeding in accordance with the provisions of this part disposition may be ordered or restrained on appropriate terms and conditions. If the disposition has occurred the debtor or any person entitled to notification or whose security interest has been made known to the secured party prior to the disposition has a right to recover from the secured party any loss caused by a failure to comply with the provisions of this part. [Emphasis added.]
In Bank of Oklahoma, N.A. v. Little Judy Industries, Inc., 387 So.2d 1002, 1005 (Fla.3d DCA 1980), this court, construing section 679.507(1), adopted the following language from Norton v. National Bank of Commerce of Pine Bluff, 240 Ark. 143, 149, 398 S.W.2d 538, 541 (1966):
We do not agree with [the] contention that the bank's failure to give ... notice of the intended sale completely discharged [the debtor's] obligation. For the most part the Code follows the theory formerly applicable to mortgages, by which the debtor was entitled to any surplus realized upon foreclosure and was liable for any deficiency. [See U.C.C. § 9-504(2) (codified at § 679.504(2), *528 Fla. Stat. (1981)).] The Code also provides that if the secured party has disposed of the collateral in a manner not in accordance with the Code "any person entitled to notification ... has a right to recover from the secured party any loss caused by a failure to comply" with the provisions of the Code.
... .
We think the just solution is to indulge the presumption in the first instance that the collateral was worth at least the amount of the debt, thereby shifting to the creditor the burden of proving the amount that should reasonably have been obtained through a sale conducted according to law. The extent to which the penalty set out in [U.C.C. § 9-507(1) (codified at § 679.507(1), Fla. Stat. (1981))] may be applicable in the case at bar is an issue that may depend upon the further development of the proof.
This court concluded that the rule stated in Norton "achieves a fair and commercially workable result without the imposition of a penalty which is not prescribed by statute," Bank of Oklahoma, N.A. at 1005. Although by adhering to our decision in Bank of Oklahoma, N.A., which we feel correctly states the law, we find ourselves in conflict with another panel of this court, see Washington, and with other district courts of appeal, see Barnett Bank of Tallahassee; Barnett; Hepworth; Turk; see also Florida First National Bank at Pensacola v. Martin, 449 So.2d 861 (Fla.1st DCA 1984) (acknowledging but not addressing an apparent conflict); Motorola Communications & Electronics, Inc. v. National Patient Aids, Inc., 427 So.2d 1042, 1046 n. 10 (Fla.4th DCA 1983) (recognizing the conflict), we are bound to do so by the impermissible alternative of finding ourselves in conflict with the Florida Legislature.
On remand, in addition to Sun Bank's burden of proving that the amount that should reasonably have been obtained through a sale conducted according to law was less than the outstanding balance of the note, and if so, how much less, there remains the question of whether the length of time Sun Bank held the collateral was unreasonable and, if so, the amount of damage to the appellants caused by Sun Bank's length of possession. As the Court of Appeals of Michigan said in Michigan National Bank v. Marston, 29 Mich. App. 99, 108, 185 N.W.2d 47, 51 (1970),
It would be unfair to allow a creditor to deprive the debtor of the possession and use of the collateral for an unreasonable length of time and not apply the asset or the proceeds from its sale toward liquidation of the debt. Moreover, it would be equally unfair to allow a creditor to take possession at all, if the creditor never intended to dispose of the security. For during the period that the debtor is deprived of possession he may have been able to make profitable use of the asset or may have gone to far greater lengths than the creditor to sell. Once a creditor has possession he must act in a commercially reasonable manner toward sale, lease, proposed retention where permissible, or other disposition. .. . If such disposition is not feasible, the asset must be returned, still subject, of course, to the creditor's security interest. To the extent the creditor's inaction results in injury to the debtor, the debtor has a right of recovery.
At the time of the filing of the notice of appeal Sun Bank was presumably aware that the commercial reasonableness of its disposition of the collateral was open to question, as was the propriety of its double-barreled election of remedies. Sun Bank had apparently attempted to cure any procedural defects by, in effect, upsetting the chessboard and returning the captured pieces to the antagonist for a new game. In law, however, unlike perhaps in other forms of competition, one may not simply start the game over and thereby avoid the consequences of earlier moves. Sun Bank has chosen its strategy, and it is now time for the rules of the game and the facts of this case to determine where that strategy will lead.
*529 Reversed and remanded for further consistent proceedings.
SCHWARTZ, Chief Judge (dissenting).
I would not reach the controversial issues involved in the court's discussion of the legal effect of the creditor's failure to give proper notice of the initial disposition of the collateral or the fact that it did not occur in a commercially reasonable manner. This is because neither of these factors has caused any real loss to the debtor. The record shows that after the computer was given to the School Board, it proved unusable even for its purposes and was both reclaimed by the bank and, of decisive significance here, was retendered to, but predictably not accepted by the appellants. Under these circumstances, the posture of the case is no different than if the computer had not been seized in the first place  with the exception of the (probably excessively lengthy) period in which the debtor was unable to use it. I believe that the debtor is thus entitled to an offset only in the amount of the rental value of the computer during the time that it was improperly deprived of its possession. Jones v. Morgan, 58 Mich. App. 455, 228 N.W.2d 419 (1975).
I perceive no reason in the UCC, in sound commercial practice, nor in actual prejudice to the debtor which should act to permit the appellant to reap the windfall of escaping the payment of its debt, less only the amount of cognizable damages it has sustained by the action of the creditor. Thus, I find no basis for adopting the majority's doctrine of a fatal "double barreled election of remedies," but see Motorola Communications & Electronics, Inc. v. National Patient Aids, Inc., 427 So.2d 1042, 1045 n. 9 (Fla.4th DCA 1983), to preclude the bank's recovery. I would therefore remand for the limited purpose of determining the value of the use of the computer, if any, during the critical period and require that that amount alone be deducted from the judgment under review.