**TAYLOR RENTAL CORPORATION,**
Plaintiff-Appellee,

v.

**J.I. CASE COMPANY, d/b/a Case Power and Equipment,**
Defendant-Appellant.

No. 83–5463.

United States Court of Appeals,
Eleventh Circuit.

Jan. 10, 1985.

Rehearing and Rehearing En Banc
Denied Feb. 22, 1985.

---

Joseph A. Vassallo, Vassallo, Pheterson & Sack, P.A., Paul A. Sack, Lake Worth, Fla., for defendant-appellant.

Ruden, Barnett, McClosky, Schuster & Russell, Gill Freeman, Miami, Fla., for plaintiff-appellee.

Before FAY and VANCE, Circuit Judges, and MacMAHON *, District Judge.

* Honorable Lloyd F. MacMahon, U.S. District Judge for the Southern District of New York, sitting by designation.

PER CURIAM:

Appellant J.I. Case Company ("Case") appeals the district court's judgment in favor of appellee Taylor Rental Corporation ("Taylor"), finding Case liable for conversion. Appellant raises two issues which warrant discussion:[1] first, Case alleges that the district court's award of damages for conversion constituted an impermissible double recovery under the Uniform Commercial Code ("UCC"), Fla.Stat. §§ 671.-101–680.111 (1983), and second, the damages were incorrectly based on evidence of the trade-in value of the collateral offered by the plaintiff-appellee. We affirm the district court's conclusions on both issues.

## I. BACKGROUND

On or about August 15, 1979, Robert Wyman ("Wyman") purchased a Taylor Rental Center. Taylor Rental Centers are engaged in the business of renting small tools and construction equipment. Taylor financed this purchase, and Wyman executed a security agreement in favor of Taylor to secure his financial obligations. The security agreement gave Taylor a security interest in all inventory held for rent "whether now existing or hereafter acquired ... and any and all ... replacements, substitutions ... and proceeds thereto." In addition, the security agreement provided that "the debtor [Wyman] would not sell or offer to sell the collateral or any part thereof without first obtaining the written consent of the lender [Taylor]...." Taylor's security interest was properly perfected on October 16, 1979.

Shortly after Wyman purchased the Taylor Rental Center, he began to trade certain items from his inventory[2] to Case in exchange for new equipment. It is undisputed that Case never made any inquiry to determine whether the traded-in equipment was subject to any lien or security interest. Case relied solely on Wyman's representation that no liens existed.

In October 1981, Wyman defaulted on his financial obligations to Taylor. Consequently, Taylor took possession of the Taylor Rental Center and sold the entire inventory at auction. The equipment (primarily Case's) yielded a gross return of approximately $72,000, which Taylor applied to Wyman's outstanding debt of $206,000. Thereafter, Taylor instituted an action against Case for conversion of its collateral.

## II. THE LAW

### A. *Proceeds Versus After-Acquired Property*

Appellant contends that the award of damages in this conversion action constitutes an impermissible double recovery. According to appellant, the sale of the Case equipment resulted in the only recovery available to Taylor. Though appellant's argument is somewhat unclear, it appears to be premised on an election of remedies theory. That is, because Taylor elected to sell the Case equipment and because the equipment constituted proceeds, and not after-acquired property, Taylor was fore-

1. Appellant raised two additional issues, which are clearly meritless. First, appellant contends that Taylor authorized the transactions between Wyman and Case. The security agreement stated that the Lender's prior written consent was necessary before the debtor could make any disposition of the collateral. Moreover, the district court found that "[t]he testimony and other evidence overwhelmingly establishes that the communications between Wyman and representatives of Taylor seeking permission to trade inventory, never took place." (R.Vol. 2 at 404). Given the district court's extensive findings on this issue, it is clear that no authorization took place. Second, appellant contends that Taylor did not prove that a deficiency was due under the security agreement. The district court spe-

cifically found, however, that the collateral was sold for $72,000 and applied to an outstanding debt of $206,000; implicit in that finding is the fact that a deficiency was owing. We conclude that evidence of the amount of the outstanding debt coupled with evidence of the amount recovered from the sale of the collateral was sufficient to support the finding that a deficiency existed.

2. Appellant made repeated references in its brief and at oral argument to the fact that Wyman alleged that some of the Taylor equipment was "junk." This derogatory characterization of the collateral obviously has no bearing on the issues before this court.

closed from pursuing any additional remedy.

As an initial matter, we note, as did the district court, that an action for conversion is a proper remedy for a secured party to bring against a third party when its collateral has been disposed of by the debtor. *United States v. McCleskey Mills, Inc.*, 409 F.2d 1216 (5th Cir.1969). When an unauthorized disposition of collateral has occurred, a secured party has numerous cumulative remedies at its disposal; it is not forced to elect a single remedy. *See* Fla.Stat. § 679.501 (1983). A creditor may pursue several remedies until the debt is satisfied. *Motorola Communications and Electronics, Inc. v. National Patient Aids*, 427 So.2d 1042, 1045 n. 9 (Fla.Dist.Ct. App.1983). The pertinent UCC provision provides that:

> (2)[A] security interest continues in collateral notwithstanding sale, exchange or other disposition thereof unless the disposition was authorized by the secured party in the security agreement or otherwise, *and also continues in any identifiable proceeds* including collections received by the debtor.

*Id.* § 679.306(2) (emphasis added). Official Comment 3 to this section of the UCC provides:

> 3. In most cases when a debtor makes an unauthorized disposition of collateral, the security interest, under prior law and under this Article, continues in the original collateral in the hands of the purchaser or other transferee. That is to say, since the transferee takes subject to the security interest, the secured party may repossess the collateral from him or in an appropriate case maintain an action for conversion. Subsection (2) codifies this rule. The secured party may claim both proceeds and collateral, but may of course have only one satisfaction.

Appellant contends that the sale of the Case equipment by Taylor constituted the single satisfaction to which Taylor is entitled. We disagree.

The only limitation on the secured party's ability to seek full satisfaction of its debt is that the secured party may not harass the debtor by *simultaneously* pursuing several remedies. That was the situation presented to the court in *Ayares-Eisenberg Perrine Datsun, Inc. v. Sun Bank*, 455 So.2d 525 (Fla.Dist.Ct.App.1984); it is not the situation presented here.

Appellant urges us to rely on *Ayares Eisenberg* in finding that appellee was precluded from seeking damages in this conversion action. This case is inapposite. Unlike the instant case, the secured party in *Ayares Eisenberg* initiated a direct action on the note before the collateral had been sold. Thus, the secured party was pursuing contemporaneously two or more remedies. In contrast, the secured party here has disposed of the collateral and is now pursuing an additional remedy in furtherance of satisfaction of the debt. *See id.* at 527.

In any event, we agree with the district court that Taylor's security interest in the new Case equipment attached as after-acquired property. Moreover, even if it could be considered proceeds, the equipment could also be considered after-acquired property; appellant has not pointed to anything which convinces us that the terms are mutually exclusive. Case could have protected itself by obtaining a purchase money security interest in its equipment. Moreover, the district court found that Case did not act in a commercially reasonable fashion in relying exclusively on Wyman's assurances that he owned the equipment free of any security interests. Under these circumstances, we agree with the district court that appellee will not obtain a double recovery in this conversion action. Appellee is merely exercising its right to pursue the cumulative remedies available to it to seek satisfaction of the debt.

### B. *Damages*

Case also contends that the district court erred in awarding damages based on the "trade-in" value of the collateral. Case alleges that the plaintiff did not sustain its burden of proving damages in a definite amount by only offering evidence

of trade-in value. We review the district court's award under the clearly erroneous standard. *Zim v. Western Publishing Co.*, 573 F.2d 1318, 1326 (5th Cir.1978). Although we recognize that the general rule regarding the measure of damages in conversion actions is the property's fair market value at the time of the conversion, *see, e.g., Page v. Matthews*, 386 So.2d 815, 816 (Fla.Dist.Ct.App.1980), under the circumstances of this case, we conclude that the trial court's determination was not clearly erroneous.

The plaintiff Taylor had the burden of proving damages in a definite amount. *United Steel & Strip Corp. v. Monex Corp.*, 310 So.2d 339, 342 (Fla.Dist.Ct.App. 1975). "However, uncertainty as to the precise amount of ... damages does not preclude recovery if there is some reasonable basis in the evidence for the amount awarded." *Clearwater Associates v. Hicks Laundry Equipment Corp.*, 433 So.2d 7, 8 (Fla.Dist.Ct.App.1983). Taylor offered evidence as to the trade-in value of the collateral. At that point, there was at least some reasonable basis upon which to ascertain damages, and the burden of proof shifted to the defendant to rebut the adequacy of plaintiff's evidence. Case, however, did not introduce any evidence as to the market value of the collateral. The only evidence Case proffered on the damages issue was that of Mr. Carminati, who testified that there was a difference between the trade-in value and the market value of the equipment. Case, however, did not introduce any alternative figures to show what the market value was. Case had taken possession of the collateral; it had assigned a trade-in value to it; and, it chose not to present any additional evidence on that question. Case can hardly complain when the trial judge relied upon the only evidence presented.

Our research has revealed no Florida cases which address whether evidence of trade-in value may support a damages award in a conversion action. We do not find *Chemical Bank v. Miller Yacht Sales*, 173 N.J.Super. 90, 413 A.2d 619 (1980), the only case which has apparently addressed this question, persuasive authority. There-

fore, we write on a clean slate as to this issue. Because we conclude that the defendant failed in its burden of proof, we find that the trial court's damages determination was correct, given the evidence before it. *Cf. Johnson v. United Parcel Service*, 616 F.2d 161, 166 (5th Cir.1980) (upholding imprecise damages award in part because defendant failed to avail itself of opportunity to present evidence as to value of converted property); *Neff v. Ford Motor Credit Co.*, 347 So.2d 1228, 1231–32 (La.Ct. App.1977) (plaintiff entitled to appraisal value of converted property because no additional evidence regarding value was introduced). In our view, one cannot convert collateral improperly, use or dispose of it, and then complain when the fact finder considers the trade-in value established by the wrongdoer, particularly in a situation where there is no other evidence of market value.

The judgment appealed is affirmed.