**GLAMORGAN COAL CORPORATION, t/a Amvest Funding Company, Plaintiff,**

v.

**John G. BOWEN, Defendant.**

**Civ. A. No. 88–0067–C.**

United States District Court, W.D. Virginia. Charlottesville Division.

July 16, 1990.

Leigh B. Middleditch, Jr., McGuire, Woods, Battle & Boothe, Charlottesville, Va., for plaintiff.

David Z. Izakowitz, Edward R. Slaughter, Jr., Slaughter & Redinger, P.C., Charlottesville, Va., for defendant.

## MEMORANDUM OPINION

MICHAEL, District Judge.

This case is before the court on the issue of whether the court should grant the plaintiff, Amvest Funding Company ("Amvest"), possession of horses which are collateral to promissory notes on which the defendant, John G. Bowen ("Bowen"), has defaulted. In December of 1987, Bowen borrowed a total of $490,000.00 from Amvest. Under four separate security agreements, Bowen secured each loan with Polish Arabian horses and their offspring. In November of 1988, Amvest filed this suit

against Bowen, claiming that Bowen had defaulted on the loans. Bowen answered the complaint and filed counterclaims against Amvest. Following the Bowen's decision not to defend against Amvest's claims,[1] the parties agreed that the plaintiff should receive a money judgment for $608,061.25 and an award of $82,030.09 as attorney's fees and expenses. The parties do not agree, however, on whether Amvest may seek possession of the collateral. After a status conference in this court's chambers, the parties agreed to submit, and have submitted, memoranda explaining and supporting their respective positions about who should receive possessory interests in the horses. The matter is now ripe for disposition.

I.

The court first addresses Bowen's concern that Amvest is not entitled to the cumulative remedies of a money judgment and possession of the horses. Section 47–9501(A) of the Arizona Revised Statutes, which governs this dispute, states that the creditor may "reduce his claim to judgment, foreclose or otherwise enforce the security interest by any available judicial procedure.... The rights and remedies referred to in this subsection are cumulative." Ariz.Rev.Stat.Ann. § 47–9501(A) (1988). Courts which have interpreted this language, which is virtually the same as § 9–501 of the Uniform Commercial Code and the commercial codes of various states, differ as to its exact meaning. An examination of the case law is informative, however, in determining the extent to which Amvest may seek both a money judgment on the debt and possession of the collateral.

Courts have had little difficulty determining that the language of the statute creates a creditor's right to seek more than one type of relief. Because any holding to the contrary would render the statutory language meaningless, a secured party may pursue as many of the statutory remedies as are necessary to satisfy the debt.

The tenth circuit has held that a "creditor may pursue those methods of collection afforded under the code or through judicial processes otherwise available." *Hill v. Bank of Colorado*, 648 F.2d 1282, 1285 (1981). The court noted that when the latter course is chosen, the creditor does not "relinquish any rights obtained by virtue of his security interest." Id. (*citing Bilar, Inc. v. Sherman*, 40 Colo.App. 38, 572 P.2d 489 (1977) (a creditor need not elect between remedies)). *See also Bank of Oklahoma v. Fidelity State Bank & Trust Co.*, 623 F.Supp. 479, 484 (D.C.Kan. 1985) (The U.C.C. preserves for secured creditor a variety of resources after default, in addition to those otherwise available through the judicial process.) *Farmers State Bank v. Ballew*, 626 P.2d 337 (Okla.Ct.App.1981). As the Arizona Court of Appeals has opined, "A secured creditor is not required to elect a remedy. He can take any permitted action or combination of actions.... Although [the secured creditor] is entitled to only one satisfaction, it may seek such satisfaction in different ways." *Citicorp Homeowners, Inc. v. Western Surety Co.*, 131 Ariz. 334, 336, 641 P.2d 248, 250 (1981) (citations omitted). In his memorandum, Bowen essentially admits that the courts allow more than one road to recovery by correctly acknowledging that if Amvest received possession of the horses, a money judgment would have to be reduced accordingly. Consequently, the court cannot give merit to Bowen's suggestion that, in this situation, Amvest is forced to elect one remedy only.

What the relevant statute does not clarify, and what courts have differed in determining, is whether a secured party may seek more than one remedy simultaneously. On this issue, a decision by one division of the Arizona Court of Appeals, *Insurance Company of North America v. General Electric Credit Corp.*, 119 Ariz. 97, 579 P.2d 601 (1978), somewhat differs from the decision in *Citicorp Homeowners*, which another division of the appellate court decided. In *Insurance Co.*, the court

---

**1.** Bowen claims that, though he believes his claims are meritorious, he is financially unable

to defend the lawsuit.

stated that "a creditor cannot pursue all remedies at once," *Id.* at 100, 579 P.2d at 604. It adopted the position of UCC commentators White and Summer, who read the statutory language regarding the availability of "cumulative" remedies to mean that " 'at some point the secured creditor must choose which remedy he will utilize and pursue that route to fruition.' " *Id.* (quoting White and Summers, Handbook of the Law Under the Uniform Commercial Code § 26–4, at 962–63 (1972)).

The Arizona Court of Appeals is not alone in adhering to White and Summers' interpretation of "cumulative remedies." An examination of decisions denying a creditor cummulative, simultaneous relief reveals a common concern that the creditor not "harass" the debtor by seeking simultaneous relief. In *Taylor Rental Corp. v. J.I. Case Co.,* 749 F.2d 1526 (11th Cir.1985), the eleventh circuit stated that the only limit on a secured party's ability to seek full satisfaction of its debt is that the secured party cannot harass the debtor by simultaneously pursuing several remedies. *Id.* at 1529. In *Taylor,* the court cited a Florida appellate court which, relying on White and Summers, held that Article 9 does not allow a secured creditor to harass the debtor by pursuing contemporaneously two or more remedies. *Ayares–Eisenberg Perrine Datsun, Inc. v. Sun Bank,* 455 So.2d 525 (Fla.Dist.Ct.App.1984). The Supreme Court of South Dakota likewise held that it could not approve the " 'shotgun' tactics" by which a creditor sought to collect its debt. *Baldwin v. First National Bank,* 362 N.W.2d 85, 90 (S.D.1985).

Significantly, the cases that disallowed simultaneous remedies involve creditors who have either abused their statutory rights or gone outside the appropriate bounds to recover their debt. For example, in *Taylor,* the secured party had previously disposed of the collateral in an unauthorized manner and was then trying further to satisfy the debt. *Taylor,* 749 F.2d at 1528. Similarly, the first circuit held that a creditor's retention of collateral precluded, in addition, a deficiency judgment. *Lamp Fair Inc. v. Perez–Ortiz,* 888 F.2d 173 (1st Cir.1989) (Creditor's retention of the collat-

eral either satisfied the debt under U.C.C. § 9–505(2) or, alternatively, creditor failed to act on the collateral in accordance with U.C.C. § 9–504); *See also Warnaco, Inc. v. Farkas,* 872 F.2d 539 (2d Cir.1989) ("A creditor holding valuable collateral has no right to hold valuable collateral and to collect on the full amount of the debt secured by the collateral."). Similar factual circumstances exist in the state court decisions denying cumulative relief. *See Ayares–Eisenberg,* 455 So.2d at 526. (Creditor had repossessed the collateral, given it away, and also sought judgment on the entire outstanding balance of the debt.); *Baldwin,* 362 N.W.2d at 90 (After initiating judicial proceeding either to obtain possession of the collateral or proceeds from the sale of such, creditor unilaterally tried to collect debtor's accounts receivable.)

When courts have addressed the cumulative remedies issue in situations in which the creditor has neither exceeded his statutory rights nor "harassed" the debtor, they have determined that the creditor may seek alternative remedies at the same time. For example, a federal district court in New Jersey held that "cumulative remedies allow the secured creditor the option of pursuing all avenues of recovery simultaneously." *Ingersoll–Rand v. Atlantic Mgt. and Consulting,* 717 F.Supp. 1067, 1070 (D.N.J.1989). The court noted that for the creditor to "simultaneously seek recovery of debt either through collateral or directly against the debtor" does not "offend traditional notions of fair play." *Id.* Similarly, a federal district court in Kentucky held that a plaintiff's pursuit of one remedy "does not preclude the concurrent pursuit" of other remedies. *Ingersoll–Rand Financial Corp. v. Electro Coal, Inc.,* 496 F.Supp 1289, 1291 (E.D.Ky. 1980).

In *Fidelity Bank, N.A. v. Secure Service Technology, Inc.,* 1989 WL 73668 (E.D.Pa. 1989), the court addressed whether a secured creditor, having initiated a suit against the defendants, was precluded from contacting debtor's account debtors before it received a judgment. Determining that the creditor could simultaneously

pursue two remedies, the court noted that it found "no support in the language of the U.C.C. that limits the right of a secured party to simultaneously pursue any and all available legal remedies." *Id.* at 3. *See also Farmers State Bank v. Robert E. Ballew and Zelma L. Ballew*, 626 P.2d 337 (Okla.Ct.App.1981) (creditor could pursue more than one remedy at the same time if his actions could be considered reasonable and legal).

■ This court is confident that simultaneous pursuit of different avenues of relief to a secured party is consistent with the statutory language of the Arizona code. At the same time, the court recognizes the potential for abuse to which a creditor might subject a debtor by seeking inconsistent or unauthorized means of satisfying the debt. Although Bowen asserts that Amvest's attempt to obtain both a monetary judgment and possession of the collateral amounts to harassment, the court does not agree. Section 47–9501(A) authorizes both methods of relief, and Amvest has not acted inconsistently with the statute. This is not a situation in which Amvest has improperly held or disposed of the collateral, nor has it gone outside the judicial process. Moreover, the court acknowledges the language in the security agreements, which provides that "All rights, remedies and options conferred upon Secured Party hereunder or by law shall be cumulative and may be exercised successively or concurrently and are not alternative or exclusive of any other such rights, remedies or options." Consequently, the court determines that Amvest is entitled to pursue both a money judgment and possession of the horses in order to satisfy Bowen's debt. To the extent that possession or sale of the horses partially satisfies the debt, Bowen's obligation will be reduced accordingly.

## II.

The parties' second point of contention involves the court's ability to grant either party possessory interests in the horses. Bowen asserts that even if Amvest is entitled to a money judgment and possession of the horses, this court cannot make a determination on the possession issue because other persons with possessory interests in the collateral are not parties. Amvest replies that outside parties with interests in the horses are free to litigate their claims in other courts, but as between Amvest and Bowen, this court may make a determination as to who has the greater possessory interest.

According to the pleadings, a stud farm in Poland sold two of the horses, Arabia and Witryna, and Witryna's foals. The farm sold the animals in December of 1989 to pay for overdue board and breeding fees. Bowen sold the horse Diabanah in February of 1988, and claims he now knows nothing about the horse's current status. Bowen still owns the last horse, Diamona, and her two offspring. However, they are boarded in New Mexico at Payjay Arabians which, according to Bowen, has a lien under New Mexico law for all unpaid boarding fees and has the right to retain possession until all debt is paid. Amvest makes no claims that the sale of Arabia, Witryna, their offspring, and Diabanah were unauthorized or made without its knowledge. In fact, Amvest made special provisions with Bowen regarding the collection of the proceeds from the sale of Diabanah.

The Arizona commercial code, like the Uniform Commercial Code, makes certain provisions for buyers to take free from a secured party's interest in the collateral. *See* Ariz.Rev.Stat. § 47–9307(A) (A buyer in the ordinary course of business takes free of the secured party's interest.); *Id.* at § 47–9306(B) (A buyer takes free of secured party's interest if secured party authorizes the sale.).

■ Even if this court could grant Amvest possession of these horses under the commercial statute, it would be prevented from doing so given the absence in this litigation of the current owners. Rule 19 of the Federal Rules of Civil Procedure defines an indispensable party as one who "claims an interest relating to the subject of the action" such that the "disposition of the action in the person's absence may . . .

as a practical matter impair or impede the person's ability to protect that interest." Fed.R.Civ.P. 19(a) Upon consideration of the factors listed in Rule 19(b)—specifically the extent to which a judgment rendered in the person's absence might be prejudicial to them—this court finds that the owners of Arabia, Witryna, Diabanah and their offspring are indispensable parties to a determination of whether Amvest has a right to possess the horses.

■ Because Bowen still owns Diamona, however, the court may grant possession of her and her offspring to Amvest in this proceeding. If New Mexico law subjects these horses to any further liens, the interested parties must litigate their claims in a court with proper jurisdiction.

In its memorandum, Bowen asks "only that Amvest not receive anything more than it is entitled to under relevant law." Bowen has chosen not to litigate the issue of his default and, according to the applicable statutes, Amvest is entitled to pursue complete relief. Accordingly, this court deems it appropriate to grant both the money judgment and attorney fees and expenses, and also declares that Amvest is entitled to immediate possession of Diamona and her offspring. To the extent that Amvest gains possession of these horses, their value should be subtracted from the money judgment received from Bowen, in accordance with the "one satisfaction" rule.

Finally, the court determines that Amvest is entitled to an order permitting it to register the judgment in any federal district court and to docket it in state courts. Because the parties have agreed to the money judgment, and because the court has determined that Amvest is entitled to possession of Diamona and her offspring as a matter of law, good cause exists enabling Amvest to register the judgment.