**In re Roy Lee SCHMIDT and Dorothy Ann Schmidt, Debtors.**

**Bankruptcy No. 91–10809–8P7.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

March 2, 1994.

Michael C. Markham, Clearwater, FL, for debtors.

V. John Brook, St. Petersburg, FL, Trustee.

Daniel J. Herman, Largo, FL, for Dr. Charles P. Fleming.

## ORDER ON OBJECTION TO CLAIM

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 7 liquidation case originally commenced as a Chapter 11 case on August 20, 1991 and converted to a Chapter 7 liquidation case on June 26, 1992. On December 17, 1992 the Debtors filed a Motion for Refund of Excess Monies claiming that there will be more than sufficient funds on hand to pay all allowed claims. On January 25, 1993, this Court entered an Order denying the Motion. On September 13, 1993, V. John Brook, Jr. (Trustee) filed his Notice of Surplus Funds indicating a surplus of approximately $150,000. On November 2, 1993 the Debtors filed a Second Renewed Motion to Refund Excess Funds. On January 12, 1994, this Court granted the Second Renewed Motion and directed the Trustee to immediately refund to the Debtors the sum of $50,000.

The matter under consideration is an Objection to Claim # 41 which was filed as a general unsecured claim in the amount of $6,079.75 by Fleming Chiropractic Clinic (Clinic). The original Objection to Claim under consideration was filed on November 2, 1993 in which the Debtors challenged the claim filed by the Clinic on the basis that the claim has been paid by insurance or has been released and the Debtor is not indebted to the Clinic in any amount. On January 13, 1994, the Debtors filed a supplemental Objection to the claim of the Clinic alleging that the interest payable on the allowed claim of the Clinic would be Federal judgment rate and not Florida judgment rate or market rate and also challenged the portion of the claim which includes a claim for attorneys fees. The original Objection to the claim of the Clinic was set for final evidentiary hearing in due course at which time the following facts relevant to the resolution of this controversy were established:

The Debtor, Roy Schmidt, is a college graduate having been extensively involved in business over many years and acting as an officer of a corporation. On September 20, 1990, the Debtor was involved in an automobile accident. He visited the Clinic in order to obtain treatment on October 10, 1990. On this visit he signed a document entitled "To The New Patient—Outline of Procedure for New Patients." (Debtor's Exh. No. 1) Just above the signature line the document includes the following statement:

I understand and agree that health and accident insurance policies are an arrangement between an insurance carrier and myself. Furthermore, I understand that the Doctor's Office will prepare any necessary reports and forms to assist me in making collection from the insurance and that any amount authorized to be paid directly to the Doctor's Office will be credited to my account on receipt. *However, I clearly understand and agree that all services rendered me are charged directly to me and that I am personally responsible for payment.* I also understand that if I suspend or terminate my care at this office, any outstanding charges for professional services rendered me will be immediately due and payable. (emphasis supplied)

It is without dispute that the Debtor signed this document on October 10, 1990 together with a second document entitled "Irrevocable Assignment, Lien and Authorization Insurance Benefits and Attorney." This document recites, inter alia, that:

*I understand that I remain personally responsible for the total amounts due the Office for their services.* I further understand and agree that this Assignment, Lien and Authorization does not constitute any consideration for the Office to await payments and they may demand payments from me immediately upon rendering services at their option. (emphasis supplied)

According to the billing practice of the Clinic, the Debtor received at the end of each visit a printout referred to during the trial as a "receipt" which is in fact not a receipt at all in the conventional sense but merely a printout indicating charges for a particular visit together with a notation for the next appointment. (Debtor's Exh. No. 5) Numerous statements indicate "no charge" albeit some do. According to the office manager of the clinic, if the actual billing was a claim to be submitted to the insurance company in toto, no charge was recorded for the patient. It appears that on January 1, 1991 the Debtor and the Clinic were notified by the Debtor's insurance company, Ocean Casualty (Insurance Company) that the Insurance Company would no longer honor any request for payment and had suspended coverage. Notwithstanding, the Debtor continued to visit the Clinic. It is without dispute that he received several treatments on the dates indicated thereafter.

As a common practice, the Clinic obtained a Letter of Protection from the Debtor during the Debtor's first visit, in which the Debtor agreed that, in the event of a settlement, he will pay the balance due by him out of the settlement which, in this instance, was 20% of the total charges made. When the Clinic was informed that the coverage was suspended and the Insurance Company would not honor any more requests for payment, the Clinic repeatedly requested a Letter of Protection from the attorney who supposedly represented the Debtor in his personal injury action. However, the Clinic was unable to obtain a Letter of Protection because all of the attorneys identified as representing the Debtor declined to furnish such a letter because, according to them, they did not represent the Debtor in any lawsuit. After the notification by the Insurance Company that the coverage had been suspended, the office manager of the Clinic contacted the Debtor to discuss the method of paying the charges incurred by the Debtor. The Debtor stated that he was unable to pay but requested what is called a "super statement" (Claimant's Exh. No. 4) which recites in chronological sequence all activity on account between October 10, 1990 and December 1, 1993.

Before the suspension of coverage the Clinic submitted bills to his Insurance Company and, in fact, received payments to the extent of coverage, the sum of $1,998.80. The Clinic attempted to collect the difference from the Insurance Company and hired an attorney for this purpose. In the meantime the Insurance Company was ordered liquidated by the Circuit Court in Leon County on October 12, 1992 and all policies issued by Ocean Casualty were canceled effective November 12, 1992. (Claimant's Exh. No. 10)

The challenge of the Debtor to the allowance of the claim of the Clinic is based on a two-fold proposition. First, it is contended by the Debtor that notwithstanding the clear and unambiguous language of the two documents signed by the Debtor on his initial visit (Claimant's Exh. 1 and 2), these documents were orally modified by an agreement with Dr. Fleming and his assistant, Mr. Nusbaum, to the extent that the Clinic would not hold him personally responsible for the bills but would look solely to the insurance company for recovery. In the alternative, the Debtor contends that under applicable law, it was the obligation of the Clinic to pursue the claim against the Insurance Company and proceed to enforce the rights granted to the Clinic by the Assignment (Claimant's Exh. No. 2) and, therefore, the claim of the Clinic should not be allowed. For this proposition, the Debtor cites the case of *Ayares–Eisenberg Perrine v. Sun Bank*, 455 So.2d 525 (Fla. 3d DCA 1984).

In opposition to the Objection, counsel for the Clinic points out that the obligation of the Debtor to pay for services rendered by the Clinic as expressed by the clear unambiguous language of both Exhibits 1 and 2 leaves no doubt that the Debtor understood that he would be personally liable for the charges and there is no credible evidence in this record to establish that this written agreement was orally modified, a proposition denied by Dr. Fleming and by the Office Manager. Concerning the second proposition, it is contention of counsel for the Clinic that the insurance company was liquidated; that the Clinic made efforts to collect and there is no realistic expectation that the Clinic would receive any satisfaction of its claim concern-

ing the treatments rendered to the Debtor from anyone, including FIGA, an entity apparently handling the liquidation of the affairs of the Debtor's erstwhile insurance company.

Having considered this matter this Court is satisfied that the Debtors' Objection to the allowance of the claim is without merit, should be overruled and the claim should be allowed, albeit only in the amount of $5,960.20, to which the claimant agrees, for the following reasons:

■ It should be noted at first that a proof of claim filed in the proper form is presumed to be valid and shall be allowed unless the objection to the same is sustained. As stated in the House and Senate Report accompanying § 502, a proof of claim or interest is prima facie evidence of the claim. *H.Rep. No. 595, 95th Cong., 1st Sess. 352 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 62 (1978)*, U.S.Code Cong. & Admin.News 1978, p. 5787. Next, although it is not urged by the Clinic, it is well established that a written contract cannot be modified by parol evidence unless the Court finds that the contract is ambiguous or there is credible evidence that there is a subsequent oral agreement canceling and replacing the original written agreement. *Sears v. James Talcott, Inc., Fla., 174 So.2d 776*. It is a well established doctrine that the parol evidence rule protects valid, complete, and unambiguous written instruments from any verbal assault that would contradict, add to, subtract from, or affect its construction. Thus, parol evidence will only be considered if there is clear, competent evidence that the subsequent parol contract was intended to cancel and supersede the original written contract. In the instant case, there is not competent evidence that a parol contract even existed.

■ Based on the foregoing, this Court is satisfied that the written documents (Claimant's Exhs. No. 1 & 2) are controlling and, therefore, it is clear that the Debtor did assume personal liability for all the bills, including the portion which was supposed to be paid but was not paid by the insurance company. This leads to the next proposition urged by the Debtor that in any event the Clinic is premature in pursuing the claim against the Debtor individually because it failed to pursue its assignment rights granted to it by Exhibit 2.

In support of this proposition, the Debtor relies on the case of *Ayares–Eisenberg Perrine v. Sun Bank, supra*. In that case the District Court of Appeals held that a bank's action in suing on a note was premature until it fulfilled its responsibility concerning disposition of collateral. This case involved the interpretation of Fla.Stat. § 679.07(1) (1981) in which the Court relied on *Norton v. National Bank of Commerce of Pine Bluff, 240 Ark. 143, 149, 398 S.W.2d 538, 541 (1966)*. In that case the court dealt with the proposition that before a secured party is entitled to assert a deficiency the secured party has an obligation to notify the debtor of the disposition of the collateral. Even a cursory reading of this case indicates that its holding is totally inopposite to the undisputed facts involved in this contested matter. Even assuming without admitting that the Clinic would be required to spend a great amount of money in an attempt to recover a claim against a defunct insurance company, this requirement would certainly defy common sense and logic and would be a great exercise in futility.

For the reasons stated, this Court is satisfied that the Debtors' Objection to Claim # 41 is without merit and should be overruled.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that Debtors' Objection to Claim # 41 be, and the same is hereby, overruled. It is further

ORDERED, ADJUDGED AND DECREED that Claim # 41 filed by Fleming Chiropractic Clinic be, and the same is hereby, allowed as a general unsecured claim in the amount of $5,960.20.

DONE AND ORDERED.